■ BRYAN GOLDSTEIN, an Infant, by MICHAEL GOLDSTEIN, His Parent and Natural Guardian, et al., Appellants, v MARTIN HAUPTMAN et al., Respondents.—In a medical malpractice action to recover damages for personal injuries, etc., the plaintiffs appeal from a judgment of the Supreme Court, Suffolk County (Doyle, J.), entered March 11, 1986, which (1) is in favor of the defendant St. John's Episcopal Hospital, Smithtown, and against them, upon its motion for judgment as a matter of law, and (2) is in favor of the defendant Dr. Martin Hauptman and against them, upon a jury verdict.

Ordered that the judgment is affirmed, with one bill of costs.

The plaintiff Bryan Goldstein was six weeks old when he suffered a severe chemical burn on the dorsum of his right foot when fluid from an intravenous connection infiltrated into the surrounding tissue. In the instant action, the plaintiffs seek damages from St. John's Episcopal Hospital, Smithtown, because of the failure of its nurses to properly monitor

the intravenous (hereinafter IV) process and from Dr. Martin Hauptman because he departed from accepted medical standards in taping the IV needle to Bryan's foot.

Testimony presented at trial revealed that the nurses had checked the IV every half hour between 8:30 A.M. when it was started and 12:30 P.M. when the infiltration was discovered. The procedure used to monitor the IV consisted of palpating the area where the needle was inserted and checking the color and temperature of the exposed foot area. The hospital chart contained two entries pertaining to the actual monitoring of the IV. One at 12:00 noon read "IV infusing well", and the second at 12:30 P.M. read "IV infiltrated". There was also an entry which indicated that the IV was still infusing between 1:00 and 2:00 P.M. which was crossed out and a notation entered which read, "NO IV DC's [discontinued] at 12:30".

The plaintiffs attempted to place in evidence an incident report completed by a nurse which summarized the procedures followed by the nurses in monitoring the IV. It also contained a section for "evaluation and follow-up" which made certain recommendations for changes in the procedure for monitoring IV's. The court refused to admit this portion of the report on the ground that the information was not related to the diagnosis and treatment of the infant plaintiff.

After both sides rested the defendant hospital moved for judgment as a matter of law dismissing the complaint insofar as it is asserted against it on the ground that there was no evidence presented to show that the nurses had improperly monitored the IV. The court granted the motion and submitted only the case against Dr. Hauptman to the jury, which returned a verdict in his favor.

On appeal, the plaintiffs argue that it was error for the trial court to dismiss the complaint insofar as it is asserted against the defendant hospital and that the incident report should have been admitted as a business record pursuant to CPLR 4518 (a). They also argue that if the incident report had been admitted the jury verdict in favor of Dr. Hauptman would have been in their favor.

In reviewing the dismissal of the complaint insofar as it is asserted against the defendant hospital, we must view the evidence in the light most favorable to the plaintiffs and give them the benefit of all inferences which may be reasonably drawn therefrom (McCloud v Marcantonio, 106 AD2d 493; Santiago v Steinway Trucking, 97 AD2d 753). Even after viewing the evidence in that light we still must conclude that

the evidence presented at trial did not provide any rational basis for a jury to render a verdict in the plaintiffs' favor against the hospital *(McCloud v Marcantonio, supra)*.

It was incumbent upon the plaintiffs to present expert testimony to prove that the monitoring of the IV by the nursing staff constituted a departure from accepted standards of medical skill and care *(see, Lipsius v White, 91 AD2d 271)*. The evidence at trial revealed that monitoring an IV every half hour conformed to accepted medical practice. While the expert witness presented by the plaintiffs testified that actual viewing of the site was the best method of detecting an infiltration at the earliest possible moment, he conceded that because of the taping procedure used by Dr. Hauptman the nurses were unable to visually check the area. The plaintiffs argue that the absence of entries on the hospital chart regarding monitoring of the IV and the corrections made to the chart concerning the infusion of IV fluid after the infiltration was discovered could lead a jury to find that the nurses had not monitored the IV as frequently as they said they did. Even if the absence of chart entries is indicative that the nurses did not monitor the IV regularly, the plaintiffs seem to ignore the fact that the 12:00 noon entry stated that the IV was infusing well. Therefore if no infiltration was detectable at 12:00 noon the failure of the nurses to monitor the IV prior to that time could not be a proximate cause of the infant plaintiff's injury since there would be no connection between the failure to monitor prior to 12:00 noon and the infiltration discovered at 12:30 P.M. We also find that in light of the overwhelming evidence which indicated that the IV was discontinued at 12:30 P.M., it would have been irrational for a jury to conclude that the strikeovers on the hospital chart were anything other than corrections.

The incident report was properly excluded because it is a hospital record and that portion which the plaintiffs sought to place in evidence did not relate to the diagnosis, prognosis or treatment of the infant plaintiff *(see, Williams v Alexander, 309 NY 283; Gunn v City of New York, 104 AD2d 848)*. Since we hold that the report was properly excluded we need not reach the issue of whether its admission might have resulted in a verdict favorable to the plaintiffs against Dr. Hauptman. Mollen, P. J., Brown, Rubin and Kunzeman, JJ., concur.