■ MARTIN SECOF et al., Appellants, v GREENS CONDOMIN-IUM et al., Respondents.—

We agree with the plaintiffs' position that the Supreme Court erred in rendering judgment in favor of the defendants at the close of the plaintiffs' case and dismissing the complaint. On September 9, 1984, the plaintiff Martin Secof slipped and fell while playing tennis at the premises owned by the defendant the Greens Condominium (hereinafter the Greens) and managed by the defendant CMS Community Management Services, Inc. (hereinafter CMS). At the trial, Mr. Secof testified that he arrived at the Greens' tennis courts on the day in question at approximately 9:00 A.M. and he joined three individuals who were already playing on the east court. He explained that the condition of the "Har-tru" surface of the courts was fine and playable and the weather was sunny and dry. Approximately one hour after he began to play, a ball was hit to his left-hand side. In order to prepare to make a backhand shot, he moved to his left as he concentrated on the ball. Mr. Secof testified, "[s]uddenly I was on my back. I was looking up and there were a bunch of faces staring down at me". He was unable to remember anything further about the accident. Sometime after the incident, he observed a large grass stain on the left side of his tennis shorts.

Mr. Secof explained that he had played on the Greens' courts since 1980, and he had never experienced any problems with traction on the court. He did, however, register a complaint to a CMS employee in the early summer of 1984 concerning the unsightly condition of the courts.

Owen Grossblatt, a resident at the Greens and a friend of Mr. Secof, testified that he was playing tennis on the Greens' courts on the morning in question when he saw Mr. Secof

playing on an adjacent court with three other individuals. Mr. Secof was playing on the south side of the adjacent court and Grossblatt was situated on the north side of his court. Sometime thereafter, Grossblatt observed Mr. Secof run back at a fast rate. His feet suddenly slipped out from under him and he fell a short distance from the fence. According to Grossblatt, Mr. Secof was not running backwards prior to the fall, but either ran sideways and then turned around, or ran back and then attempted to swing around to hit the ball. Grossblatt ran over to assist Mr. Secof, who was lying on his back with his ankle partially underneath the fence. In the area of the fall, Grossblatt observed an accumulation of leaves and moss and he noticed that the area was moist.

According to Grossblatt, the mossy condition and the presence of leaves in the area of Mr. Secof's fall had existed for years. Grossblatt had complained several times about this condition to CMS's employees. During Grossblatt's testimony, several photographs of the Greens' tennis courts, including the area of Mr. Secof's fall, were admitted into evidence. Grossblatt stated that the photographs, which showed an accumulation of leaves and moss in the area of Mr. Secof's fall, were fair and accurate representations of the tennis courts on the day of the accident.

Marvin Boris, a friend of Mr. Secof who lived at the Greens, testified that on the morning of September 9, 1984, he was driving toward the exit of the condominium development when he noticed a commotion on the tennis courts. When Boris went over to the courts, he saw a number of individuals gathered around Mr. Secof, who was lying on the ground near the fence on the south end of the east tennis court. Boris noticed some skid marks extending from mossy foliage in the area near the fence. Boris also testified that he had noticed moss on the tennis courts on several occasions, and he informed a CMS employee of the condition.

The plaintiffs' expert, a licensed professional engineer, testified that the "Har-tru" surface of the Greens' tennis courts was comprised of chipped stone which provided a porous playing surface. The "Har-tru" surface also allows the player "a great deal of slide". The expert explained that the maintenance procedure for "Har-tru" surface courts involves a daily sweeping and watering of the courts and a weekly inspection of the surface for depressions and cuts. Additionally, the expert noted that because of the porous nature of the "Har-tru" surface, vegetation, such as moss and weeds, tends to develop, which necessitates the use of chemical treatments.

The expert emphasized that removal of vegetation from the court surface is important both for the integrity and maintenance of the court surface as well as for the safety of the players. When the expert was shown the photographs depicting the Greens' tennis courts, he opined that the mossy condition which existed in the area of Mr. Secof's fall had been there for at least one year. The expert concluded further that this condition demonstrated that the tennis courts were not properly maintained and had not been chemically treated.

At the end of the plaintiffs' case, portions of the deposition testimony of Glen A. Wright, an employee of the Greens, were read into evidence. Wright stated that he was hired by the Greens as a resident manager on September 1, 1984. Wright testified that while he had observed CMS employees sweeping and watering the tennis courts at the Greens on a regular basis, he was unsure as to whether he had seen maintenance being done on the tennis courts between September 4, 1984, the first day he worked, and September 9, 1984, the date of Mr. Secof's accident.

After the plaintiffs rested, the defendants moved to dismiss the plaintiffs' action for failure to make out a prima facie case of negligence. The court granted the defendants' motion on the basis that, in its view, the plaintiffs failed to make out a prima facie showing that the mossy condition of the tennis courts was a proximate cause of Mr. Secof's fall. We disagree and, accordingly, reverse and grant a new trial.

In order to be entitled to judgment as a matter of law, a defendant movant has the burden of showing that the plaintiff failed to make out a prima facie case. In ruling on such a motion, the plaintiff's evidence must be accepted as true and given the benefit of every reasonable inference which can reasonably be drawn from that evidence *(see, Goldstein v Hauptman,* 131 AD2d 724; *McCloud v Marcantonio,* 106 AD2d 493). The motion should only be granted if there is no rational process by which a jury could find for the plaintiff as against the moving defendant *(see, Hylick v Halweil,* 112 AD2d 400). Moreover, "[t]o establish a prima facie case of negligence based wholly on circumstantial evidence, '[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred' *(Ingersoll v Liberty Bank,* 278 NY 1, 7). The law does not require that plaintiff's proof 'positively exclude every other possible cause' of the accident but defendant's negligence *(ibid.* [quoting

*Rosenberg v Schwartz,* 260 NY 162, 166])" *(Schneider v Kings Highway Hosp. Center,* 67 NY2d 743, 744).

Applying this standard to the case at bar, we conclude that the trial court acted improperly in dismissing the plaintiffs' complaint. The plaintiffs' evidence, when viewed in a light most favorable to them, sufficiently established that the mossy condition and leaves existed in the south side of the tennis court where Mr. Secof was playing, and that he fell in the vicinity of the moss and leaves, as evidenced by the green stain on his shorts. Boris also testified that he observed skid marks in the mossy area of Mr. Secof's fall. Additionally, the plaintiffs' expert opined that the tennis court in question had not been properly maintained and several witnesses testified that they had complained about the moss and leaves on the courts on several occasions. Based on this evidence, we conclude that the plaintiffs adequately established a prima facie case of negligence against the defendants. Although there was some evidence to indicate that the "Har-tru" surface was constructed so as to provide players with "a great deal of slide" and Mr. Secof testified that he was unaware of the exact cause of his fall, there was sufficient circumstantial evidence upon which a jury could reasonably infer that the moss and leaves on the court proximately caused Mr. Secof's fall. Mollen, P. J., Lawrence, Eiber and Kooper, JJ., concur.