■ KENNETH GRUNTZ, Individually and as Administrator of the Estate of LUCILLE GRUNTZ, Deceased, Appellant, v DEEPDALE GENERAL HOSPITAL et al., Respondents.—In a medical malpractice action, *inter alia,* to recover damages for wrongful death, the plaintiff appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Queens County (Le Vine, J.), entered March 29, 1988, as upon a ruling granting the motion of the defendant Deepdale General Hospital made at the close of the plaintiff's case to dismiss the complaint insofar as it is asserted against it for failure to make out a prima facie case, and upon a jury verdict in favor of the defendant Frank Cole, is in favor of the defendants Deepdale General Hospital and Frank Cole and against the plaintiff.

Ordered that the judgment is reversed insofar as appealed from, on the law and the facts, and the plaintiff is granted a new trial (1) of his cause of action against the defendant Deepdale General Hospital and (2) of his cause of action against Frank Cole on the issue of negligent postoperative monitoring, diagnosing and treating of the decedent, with costs to abide the event of the new trial.

In January 1982 the decedent was admitted to the defendant Deepdale General Hospital for gall bladder surgery, but suffered complications and was treated postoperatively by various physicians in Deepdale General Hospital's intensive care unit. She died some two months after her admission, allegedly due to complications resulting from the surgery. Her administrator thereafter commenced a wrongful death action against, *inter alia,* Deepdale General Hospital and the surgeon who performed the operation, Dr. Frank Cole. The plaintiff alleged, *inter alia,* that the postoperative care provided to the decedent by Dr. Cole and others was contrary to good and

accepted medical practice, and further, that Dr. Cole had performed an unnecessary surgical procedure. Subsequent to the completion of the plaintiff's case, the Supreme Court granted the motion of the defendant Deepdale General Hospital to dismiss for failure to establish a prima facie case. The trial then proceeded with Dr. Cole as the only defendant. After the close of testimony, the plaintiff's counsel moved for a mistrial, arguing that, by erroneously dismissing the complaint insofar as it is asserted against the defendant Deepdale General Hospital, the court had, in effect, permitted the defendant Cole to escape liability by laying blame on staff associated with Deepdale General Hospital. The motion was denied. The jury ultimately found for Dr. Cole. On appeal, the plaintiff argues, *inter alia,* that the court erred in granting the motion of Deepdale General Hospital to dismiss. We agree.

It is well settled that a motion to dismiss for failure to establish a prima facie case should only be granted if there is no rational process by which a jury could find for the plaintiff and against the moving defendant upon the evidence presented *(see, Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 245; *Colozzo v LoVece,* 144 AD2d 617, 618). Viewing the plaintiff's evidence in the light most favorable to the plaintiff and resolving all questions of credibility in his favor *(see, Monahan v Weichert,* 82 AD2d 102, 105), we find that there was sufficient evidence adduced from which a reasonable person might conclude that Deepdale General Hospital was negligent and that its negligence was a proximate cause of the decedent's death.

In this respect, there was testimony from the plaintiff's expert, Dr. William Stahl, who offered his opinion that the postoperative monitoring and treatment provided to the decedent at Deepdale General Hospital was contrary to good and accepted medical practice. Specifically, Dr. Stahl stated, *inter alia,* that subsequent to the decedent's surgery, her blood gas levels were indicative of severe metabolic acidosis caused by low blood flow due to low blood volume. According to Dr. Stahl, the decedent's condition called for careful monitoring by the hospital intensive care staff and attending physicians so that the proper course of treatment could be immediately undertaken. It was Dr. Stahl's opinion, based on the available records, that the appropriate procedure was (1) the immediate insertion of a Swan-Ganz catheter, which would have facilitated the monitoring of the decedent's cardiac function, and (2) the reinfusion of fluids. Dr. Stahl testified that the actions taken at this juncture by the attending physicians, which was,

*inter alia,* the administration of sodium bicarbonate to reduce blood gases, was "totally contrary to accepted medical practice". Dr. Stahl also indicated that, insofar as the available records disclosed, the sodium bicarbonate had been administered prior to the institution of proper monitoring procedures. We note in this respect, that the defendant hospital failed to produce the nurses' daily "flow charts", in which detailed notations of the decedent's postoperative care were recorded. It is well settled that an unfavorable inference may be drawn when a party fails to produce evidence which is within its control and which it is naturally expected to produce *(cf., Noce v Kaufman,* 2 NY2d 347; *Ausch v St. Paul Fire & Mar. Ins. Co.,* 125 AD2d 43, 48; *United States Fire Ins. Co. v Commodore Mfg. Corp.,* 108 AD2d 621, 622; Richardson, Evidence § 92 [Prince 10th ed]; PJI 1:77).

Viewing the foregoing in a light most favorable to the plaintiff, and resolving all issues of credibility in her favor *(see, Colozzo v LoVece, supra; Alberti v St. John's Episcopal Hosp.,* 116 AD2d 612), we find that there was sufficient evidence adduced from which a reasonable person might conclude that the acts or omissions attributable to Deepdale General Hospital constituted a departure from accepted standards of medical care in the community and that this departure proximately contributed to the decedent's death *(see, Colozzo v LoVece, supra).*

We further conclude that, under the circumstances presented, it would be improper to exclude Dr. Cole from any retrial of the action insofar as the issues relating to negligent postoperative care are concerned *(see, Braun v Rycyna,* 100 AD2d 721, 722; *Nicholas v Reason,* 84 AD2d 915, 916). A principal theory of liability advanced by the plaintiff against all of the defendants was that the postoperative care rendered at Deepdale General Hospital, and by various attending physicians, including Dr. Cole, was inadequate and ultimately constituted a proximate cause of decedent's death. The Supreme Court's erroneous conclusion that the plaintiff had failed to make out a prima facie case against the hospital, where the postoperative care was actually rendered, undoubtedly influenced the jury's consideration of the same allegations pertaining to Dr. Cole, especially since Dr. Cole and his expert medical witness testified repeatedly on Dr. Cole's behalf that physicians associated with the defendant hospital were principally responsible for the decedent's postoperative care *(see, Braun v Rycyna, supra,* at 722). In light of the foregoing, we conclude that the interests of justice require

that a new trial also be granted as to the defendant Dr. Frank Cole on the limited issue of the negligent postoperative monitoring, diagnosing and treating of the decedent *(see, Braun v Rycyna, supra,* at 722). Kooper, J. P., Harwood and Miller, JJ., concur.

Balletta, J., concurs in part and dissents in part and votes to modify the judgment appealed from by deleting the provision thereof in favor of the defendant Deepdale General Hospital and substituting therefor a provision granting the plaintiff a new trial of his cause of action against Deepdale General Hospital and as so modified, to affirm the judgment, with the following memorandum: I am in complete agreement with the majority with respect to the defendant Deepdale General Hospital since it is clear that the court erred in dismissing the case as against the hospital for the reasons fully set forth in the majority memorandum. However, I disagree with the majority's viewpoint that a new trial is also necessary with respect to the defendant Cole.

It is well established that the requisite elements of proof in a medical malpractice case are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of the injury or damages *(see, Amsler v Verrilli,* 119 AD2d 786). As we stated in *Hylick v Halweil* (112 AD2d 400, 401), the plaintiff "was required to make a prima facie showing that the defendant failed to exercise such reasonable care and diligence in his treatment of her as would be expected of the average member of his profession in the locality at the time of treatment * * * and that plaintiff's injury proximately resulted from defendant's departure from the required standard of performance" *(see generally, Mortensen v Memorial Hosp.,* 105 AD2d 151; *Lipsius v White,* 91 AD2d 271; *Monahan v Weichert,* 82 AD2d 102; *Kletnicks v Brookhaven Mem. Assn.,* 53 AD2d 169). Moreover, it is equally well established that "unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony to support the allegations of malpractice" *(Mulligan v Shuter,* 71 AD2d 669; *see also, Koehler v Schwartz,* 48 NY2d 807; *Weiss v Zuckerman,* 114 AD2d 895).

In the instant case, in the absence of any expert testimony to the effect that the defendant Dr. Cole departed from good and acceptable medical practice which was the cause or partial cause of the injury complained of, it would be improper to grant the plaintiff a new trial as to his cause of action against Dr. Cole. Although the plaintiff's main expert, a Dr. Stahl,

testified that certain postoperative monitoring procedures should have been followed in this case, at no time did he ever connect any action or lack of action by Dr. Cole to the alleged malpractice. There was no testimony presented that Dr. Cole was the person ultimately responsible for the postoperative care of the decedent, and there was no testimony presented that Dr. Cole acted negligently when he did see the decedent after the operation. In fact, Dr. Stahl testified that the decedent's renal failure was caused in part "by the fact that the patient had a serious illness to begin with". In short, the record is devoid of any testimony which indicates that Dr. Cole himself departed from good and acceptable medical practice.

The majority takes the position that the dismissal as against the hospital provided Dr. Cole with the opportunity to lay blame on a defendant who was no longer part of the case. However, the majority overlooks the fact that Dr. Cole was called as a witness on behalf of the plaintiff and that on the plaintiff's direct case, he testified that the anesthesiologist and the cardiologist were the individuals responsible for monitoring the decedent's condition and for performing the monitoring techniques supported by Dr. Stahl. This testimony occurred at a time when the hospital was still a defendant in the case. Thus, the plaintiff had the opportunity to salvage his case even before he rested and the case against the hospital was dismissed. Yet, despite the weakness of the case against Dr. Cole, the plaintiff failed to present any evidence to counteract Dr. Cole's testimony.

Accordingly, while the majority believes that the interests of justice require a retrial with respect to Dr. Cole, my conclusion is exactly the opposite. There is no reason why Dr. Cole should be subjected to a retrial of this malpractice case since the plaintiff failed in his proof with respect to showing any malpractice on the part of Dr. Cole. In my view, the interests of justice require that this doctor be relieved of further litigation. He should not now be penalized through no fault of his own for the erroneous trial strategy pursued by the plaintiff during the first trial.

I would vote, therefore, to sustain the jury verdict's with respect to Dr. Cole (see, Gross v Friedman, 138 AD2d 571, affd 73 NY2d 721; Goldstein v Hauptman, 131 AD2d 724; Minardo v Estate of Mussio, 116 AD2d 701).