OPINION OF THE COURT
Shirley Werner Kornreich, J.
Claimant brings this action for conversion against defendant *761 pawnbroker. A trial was held before me at which claimant and Bernard Cooperman, the loan manager for defendant, testified. Based upon the credible evidence, I make the following findings of fact.
On September 26, 1994, claimant pawned a diamond bracelet and received a $500 loan from defendant. The bracelet had been purchased from Macy’s department store for $2,576.35. The terms of the loan were set forth on the pawn ticket, which specified the interest rate as 3% per month, beginning on September 26, 1994. The ticket was signed by claimant, who gave his address as 1551 University Avenue, apartment 14E, Bronx, New York.
Claimant also was informed by the back of the ticket that, if unredeemed, the pledge could be sold after four months, upon 30 days’ notice to him. The ticket further provided that the "pledge shall be deemed to have a value of not exceeding twice the amount of our loan stated on this ticket and in no event or suit shall [defendant] be liable on any claim in excess of that amount”. Finally, the ticket stated: the pledged item may be redeemed at any time prior to public auction, if sold at public auction, money in excess of the loan, interest and costs "shall be paid to the holder of the pawn ticket” and if the pawnbroker purchases the article pledged at auction, the holder of the ticket shall have an additional 10 days to redeem the article pledged.
Claimant admitted that he neither paid interest on the $500 loan nor redeemed the pledged bracelet. He could not recall the date upon which he finally returned to the pawnshop, but believed it was some time in August. This action was commenced on September 15, 1995.
Mr. Cooperman testified that $165 in interest was due on the $500 loan. He stated that a February 1, 1995 letter and a second July 14, 1995 letter were sent to claimant at the address he listed on his pledge receipt, informing him that his collateral would be sold unless he made payments or redeemed the pledge. Claimant never responded to either letter and, at trial, denied receiving the letters. As a result, the bracelet was sold at public auction for $550 on August 23, 1995. Defendant repurchased the bracelet and, then, sold it privately.
Defendant produced voluminous records to substantiate that it sent the letters of notice, that it bid $550 for the bracelet at public auction, that newspaper publication of this auction occurred and that defendant had completed the required filing with the New York City Bureau of Consumer Affairs. Defen *762 dant, however, did not produce a record documenting the private sale of the bracelet, its date and the amount it received for the bracelet, even though Mr. Cooperman admitted that defendant was in possession of such a record and even though the sales amount and date are material to the determination of this case. Moreover, the required filing demonstrated that of the 74 items put on sale by defendant at the public auction, 63 were repurchased by defendant.
General Business Law § 48 permits a pawnbroker to sell a pledge at public auction after it has been held for four months if the pawnbroker serves notice by first-class mail of the intended sale, at least 30 days prior to the date of sale, and advises the pledgor that he may elect to have the pawnbroker retain the collateral for one year. Section 49 of the General Business Law provides that no pledge may be sold "unless written or printed notice of intention to sell with a statement of the article or articles to be sold has been first mailed by letter” to the pledgor at least 10 days before the sale. The section also provides for publication of the auction and permits the pledgor to redeem the collateral within 10 days of the sale if the pawnbroker buys back the pledged item at the auction. Finally, General Business Law § 50 obligates the pawnbroker to pay over to the individual entitled to redeem the pledge any surplus money "arising from any such sale, after deducting” costs.
Here, I find that defendant pawnbroker fulfilled its notice obligation prior to the public sale of the bracelet by letters sent to claimant and by publication. Yet, I find that defendant was remiss both in its duty to permit claimant to redeem the bracelet within 10 days after its repurchase at public auction and to remunerate claimant with the excess money received from the private sale of the bracelet.
On this record, it is the court’s determination that defendant failed to retain the repurchased bracelet for the requisite 10 days, thereby violating the statutory mandate and the terms of the pawn ticket. The bracelet was repurchased at public auction on August 23, 1995. Defendant was obligated to retain it through September 2, 1995. Claimant, however, testified that he believed he returned to the pawnshop at the end of August and was told that his collateral was no longer in defendant’s possession. Moreover, defendant admitted that it possessed a record reflecting the date the collateral was sold and did not produce that record at trial. Given defendant’s failure to produce this material piece of documentary evidence, the court *763 has inferred that the missing record would demonstrate that the collateral was sold before September 2, in violation of General Business Law § 49. (See, Gruntz v Deepdale Gen. Hosp., 163 AD2d 564, 566 [2d Dept 1990] [unfavorable inference may be drawn against party where party fails to produce evidence within its control which it is naturally expected to produce]; Richardson, Evidence § 92 [Prince 10th ed].)
Additionally, I find a further violation of General Business Law § 49 in defendant’s failure to notify claimant of the repurchase and right of redemption. There is a dearth of case law interpreting General Business Law §§49 and 50. If the statutes are narrowly read, a pawnbroker only need send the required notices of intended sale, comply with the publication requirements, retain collateral repurchased for 10 days to enable redemption and pay any surplus money from "the sale” of the collateral to the pledgor. General Business Law § 49 sets forth no specific requirement that the pawnbroker notify the pledgor of his right of redemption in the event his property is repurchased by the pawnbroker at auction. Nor does General Business Law § 50 make clear whether the returnable surplus gleaned by the pawnbroker as a result of selling the pledgor’s collateral relates solely to the public auction or, rather, to all sales of the collateral by the pawnbroker.
The provisions of General Business Law §§49 and 50 enabling a pledgor to redeem collateral repurchased at public auction within 10 days and providing for repayment to a pledgor of surplus money accumulated by a pawnbroker from the sale of collateral were enacted in 1960. The legislative Bill Jacket (L 1960, ch 981) makes clear that these provisions were amended with an eye to protecting "the millions of customers throughout the State [of New York] who annually pledge their goods with pawnbrokers.” (Mem of NY Dept of Commerce, Apr. 8, 1960; letter of NY Comptroller Haight, Mar. 31, 1960; letter of Atty-Gen Lefkowitz, Mar. 30, 1960; letter of Assembly Judiciary Comm, Feb. 8, 1960 [specifically, "(t)he purpose of th(e) bill is to regulate the pawnbrokerage business and the disposition of unclaimed surplus from the sale of pledges”]; Mem of NY Dept of Commerce, Apr. 8, 1960; accord, letter of NY Comptroller Haight, Mar. 30, 1960 [bill provides protection to pledgor in event of default].)[1] Interpretation of these statutes should be in keeping with this design.
*764 A pledgor’s right to redeem his property after repurchase by the pawnbroker at public auction is an empty privilege if the pledgor is unaware of the repurchase. Fulfillment of the plain legislative purpose as well as basic fairness dictate that commensurate with the pledgor’s prerogative of redemption is the pawnbroker’s duty to retain the property for 10 days and notify the pledgor of the repurchase and his right to redeem his property. Defendant, here, failed to do so. A failure this court deems to be violative of General Business Law § 49.
Similarly, the court finds a violation of General Business Law § 50. Substantial justice, which is the mandate of this court, and the protection of pledgors, which is the stated intent of the statute, militate in favor of reading General Business Law § 50 to require defendant to relinquish any excess money from the private sale of the bracelet. Indeed, were General Business Law § 50 interpreted to pertain only to public auction sales, a pawnbroker could evade the statute’s mandate and design. That is, a pawnbroker could repurchase the item at auction for an amount less than that of the loan, interest due and costs, and then sell the item for its true value. The pawnbroker would reap a windfall by retaining the proceeds of the private sale, money exceeding the loan and interest amounts and his costs.
Here, I find that this is what occurred. Defendant pawnbroker repurchased 63 of the 74 items he placed at public auction. Among those items was claimant’s bracelet. He repurchased the bracelet for $550, an amount less than the loan and interest due. He almost immediately sold the bracelet privately. At trial, he chose not to produce the record recording the amount he received for the diamond bracelet. As a result, the court has inferred that the missing record would demonstrate that the bracelet was sold for an amount in excess of the loan, interest and costs. (See, Gruntz v Deepdale Gen. Hosp., 163 AD2d 566, supra.) This surplus money was not paid to claimant, and defendant, thereby, improperly profited from the sale in violation of General Business Law § 50.[2]
*765 Having found that defendant wrongfully sold claimant’s bracelet within the statutory 10-day period and that he failed to reimburse claimant under General Business Law § 50, it remains for this court to determine the damages due claimant. Substantial justice impels the court to award claimant the true measure of his loss. That loss is equal to the value of the bracelet ($2,576.35), minus the loan amount ($500), the interest owed ($165) and lawful charges such as the cost of the notification letters, publication in two newspapers and auction and filing costs (approximately $350).[3]
The court is not compelled to limit damages to twice the amount of the loan, as provided in the pawn ticket. Such a limitation is against public policy since it would protect defendant pawnbroker from his violation of the mandates of General Business Law §§49 and 50. It, also, would contravene the directive of General Business Law § 50 requiring a pawnbroker to pay over all surplus money from the sale of collateral to the pledgor no matter the amount. Furthermore, the limitation contradicts a subsequent clause in the pawn ticket providing that claimant is entitled to any money from public auction in excess of the loan, interest and costs. That clause has no money limitation. Given that defendant drafted the pawn ticket and that the two clauses are ambiguous, the ambiguity must be construed against defendant. (See, Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 460 [1989] [ambiguity in contract must be construed against party who drafted agreement].) Accordingly, judgment is granted to claimant in the amount of $1,561.35 plus interest from September 1, 1995.

. The Bill Jacket explains that the Attorney-General and Comptroller recently had completed an investigation of the pawnbrokerage business which resulted in the recovery of approximately one-half million dollars in *764 surplus monies unreported to the State by pawnbrokers from the sale of unredeemed pledges which were considered abandoned property. The Abandoned Property Law pertaining to the disposition of unclaimed surplus money from the sale of unredeemed pledges, therefore, was amended in conjunction with the General Business Law.

. Section 1301 of the Abandoned Property Law provides:
"2. Any surplus moneys resulting from a sale by a pledgee, other than a banking organization, after the thirtieth day of June, nineteen hundred and
*765 fifty of personal property after deducting the amount loaned or advanced, interest due thereon and any other lawful charges, which surplus moneys have remained unpaid to the person entitled thereto for one year from the date of such sale, shall be deemed abandoned property.
"3. Each year in the month of July and on or before the tenth day thereof every pledgee shall pay to the state comptroller all abandoned property specified in subdivision two of this section.”
Again, this statute refers only to "a sale” of collateral without specifying whether that sale refers to an auction sale or all sales. If "sale” is interpreted to apply only to auction sales, a pawnbroker could circumvent this statute by buying the collateral at public auction for an amount less than the loan, interest and costs and selling it privately for a greater amount, thereby owing nothing under this statute.

. The record is devoid of these costs and the $350, therefore, is the court’s approximation of the amount spent by defendant.