■ MARY QUINN, Appellant-Respondent, v NYACK HOSPITAL et al., Respondents, and JOSEPH SALERNO, Appellant. (And a Third-Party Action.) [730 NYS2d 142] —In an action, *inter alia,* to recover damages for medical malpractice, the plaintiff appeals, as limited by her brief, from so much of an order of the

Supreme Court, Rockland Court (Meehan, J.), entered April 27, 2000, as granted the motion of the defendants Nyack Hospital, K. Schindele, and S. Varughese for summary judgment dismissing the complaint insofar as asserted against them, and the defendant Joseph Salerno cross-appeals, as limited by his brief, from so much of the same order as denied his motion for summary judgment dismissing the complaint insofar as asserted against him.

Ordered that the order is reversed insofar as appealed from, on the law, the motion of the defendants Nyack Hospital, K. Schindele, and S. Varughese for summary judgment dismissing the complaint insofar as asserted against them is denied, and the complaint is reinstated insofar as asserted against those defendants; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from; and it is further,

Ordered that the plaintiff is awarded one bill of costs payable by the defendants appearing separately and filing separate briefs.

At approximately 8:35 P.M. on October 15, 1993, the plaintiff's decedent, Joseph Quinn, who was 51 years old, presented himself at the emergency room of the defendant Nyack Hospital for alcohol detoxification. Quinn was admitted to the hospital at 10:50 P.M. due to a chest X-ray which indicated that he was suffering from pneumonia. The orders for Quinn's admission, treatment, and care were given over the telephone by the defendant Joseph Salerno, a private attending physician.

Quinn was admitted to a special pulmonary care unit. Based on the results of tests performed in the emergency room, Salerno ordered, *inter alia*, that Quinn receive oxygen and intravenous fluids, and that his vital signs be monitored every four hours. It its undisputed that Salerno did not examine Quinn at any time. At 4:00 A.M., Quinn became agitated and tried to get out of bed. Salerno was notified of this by telephone, and he authorized placing Quinn in four-point restraints. At 7:25 A.M., Quinn went into cardiac arrest and never regained consciousness. Although Quinn was resuscitated, he remained comatose until his death on October 20, 1994.

In support of a motion for summary judgment, the movant has the burden of establishing prima facie entitlement to judgment as a matter of law by offering sufficient evidence to eliminate any triable issue of fact (*see, Zuckerman v City of New York,* 49 NY2d 557, 562). Upon a failure to make such a showing, the motion must be denied regardless of the sufficiency of the opposing papers (*see, Winegrad v New York Univ. Med.*

*Ctr.,* 64 NY2d 851, 853). In support of their respective motions for summary judgment dismissing the complaint insofar as asserted against them, the defendants did not sustain this prima facie burden.

Salerno, who never saw Quinn before his cardiac arrest but prescribed treatment by telephone, failed to demonstrate prima facie that he did not depart from good and accepted medical practice by allegedly failing to respond to Quinn's deteriorating vital signs or to monitor his abnormal cardiovascular and hemodynamic condition. In particular, Salerno failed to explain the omission of a directive to monitor Quinn's oxygen saturation level at least from 4:00 A.M., when he authorized Quinn to be restrained.

The defendants Nyack Hospital, K. Schindele, and S. Varughese (hereinafter the hospital defendants) failed to demonstrate prima facie that they did not depart from good and accepted nursing practices by allegedly failing to record the results of their monitoring or to report Quinn's deteriorating vital signs and altered mental status to Salerno or another physician. The Supreme Court improperly granted summary judgment to the hospital defendants based upon the alleged deficiencies of the affidavit of the plaintiff's expert. Since the hospital defendants failed to meet their prima facie burden, there was no cause to assess the adequacy of the plaintiff's opposition to the motion (*see, Winegrad v New York Univ. Med. Ctr., supra*).

Accordingly, both motions for summary judgment should have been denied. Goldstein, J. P., Luciano and Crane, JJ., concur.

McGinity, J., concurs in part and dissents in part, and votes to affirm the order insofar as appealed and cross-appealed from, with the following memorandum. I agree that the Supreme Court properly denied the motion of the defendant Joseph Salerno for summary judgment dismissing the complaint insofar as asserted against him, as he failed to establish his entitlement to summary judgment as a matter of law (*see, Alvarez v Prospect Hosp.,* 68 NY2d 320; *Zuckerman v City of New York,* 49 NY2d 557). Further, the Supreme Court properly granted the motion of the defendant Nyack Hospital and its nurses, the defendants K. Schindele and S. Varughese, for summary judgment dismissing the complaint insofar as asserted against them. In my view, the hospital and the nurses sufficiently established their entitlement to summary judgment by demonstrating that Joseph Quinn was adequately monitored. The defendant nurse Varughese testified that she checked Quinn

every half hour, took his respiratory rate, and checked to see if he was experiencing any shortness of breath. Vital signs were taken at 12:00 A.M., 1:00 A.M., and 4:00 A.M. As noted, the orders were for vital signs to be taken every four hours and the next interval would have been at 8:00 A.M. Quinn was also monitored by the respiratory therapist, a trained specialist, who observed Quinn at 2:30 A.M. and 6:00 A.M. and noted in his chart that Quinn was taking the treatment well. The defendant nurse Schindele checked in on Quinn at 7:15 A.M.— just 10 minutes prior to the cardiac arrest—and did not find him to be in any distress. Further, Schindele testified that she kept a "watchful eye" on Quinn and that even when she left his room, she could still see him in his bed from the nurse's station. This testimony was undisputed.

While the nurses did not document each of the visits, the lack of complete documentation does not necessarily indicate that Quinn went unmonitored as the above testimony illustrates. The evidence shows that the nurses were not deficient in failing to take vital signs more frequently than ordered. In any event, in view of the above evidence, the failure to document any visits made earlier would not have been a proximate cause of the cardiac arrest (*see, Goldstein v Hauptman,* 131 AD2d 724).

Accordingly, I would affirm the order insofar as appealed and cross-appealed from.