OPINION OF THE COURT
Wayne P. Saitta, J.
*588 In this condemnation proceeding, condemnor City of New York moves this court for an order dismissing the fee claim of Cassino Contracting Corp. (hereinafter the claimant), on the ground that claimant’s appraisal report, dated October 7, 2010, is invalid as a matter of law.
Upon reading the notice of motion of the City of New York, dated June 15, 2011, the annexed affirmation of Holly R. Gerstenfeld, Esq., Assistant Corporation Counsel, dated June 15, 2011, and the exhibits annexed thereto; the affirmation in opposition of Michael Rikon, Esq., Goldstein, Rikon, & Rikon, EC., attorneys for claimant, and the exhibits annexed thereto; the reply affirmation of Holly R. Gerstenfeld, Esq.; the vesting order signed by the Honorable Abraham Gerges, Justice of the Supreme Court, dated October 3, 2008, and all proceedings heretofore had herein; after hearing argument of counsel and due deliberation thereon, the City’s motion to dismiss is denied for the reasons set forth below.
The City acquired title to the subject property, block 5676 lot 1 (damage parcel 1), a 97,294-square-foot parcel of land located at the southeast corner of Woodrow Road and Grantwood Avenue on Staten Island, on October 9, 2008. On the date of vesting the property was vacant and was restricted by a declaration limiting its use to a storm water retention basin until such time as the City of New York constructs a storm water outlet for the storm flow contributing to the retention basin.
The City argues that the property has no value because of the restrictive declaration to which it is subject. The City argues that since the property is restricted by a declaration that forbids development until a storm sewer system is built, and that one was not built as of the vesting date, it should be valued as permanently restricted by the declaration. The City also argues that the costs for a developer to build a detention water system that would allow the site to be developed under the terms of the declaration, without the City building a storm water outlet, would be so expensive as to prohibit development.
Further, the City argues that the opinion in claimant’s appraisal report that the highest and best use for the site is as a speculative investment is not legally cognizable, and the valuation method used of discounting the unregulated use by 85% is not a valid method of valuation, but mere speculation.
Lastly the City argues that none of the comparable sales cited in claimant’s appraisal report was of a property encumbered by similar restrictions.
*589 Claimant contends that the restrictive declaration is, by its terms, temporary and will restrict the property only until the City builds a storm water outlet, and that construction of such an outlet was on the City’s plans and maps as of the date of vesting.
Claimant further contends that a willing buyer would have purchased the property as a speculative investment on the date of vesting. That is, on the expectation that even though one could not develop the property on the vesting date, there was a reasonable probability that at some point in the future the City would build a storm water outlet and the declaration would cease to restrict the property.
Claimant also contends the fact that the City assessed the property at $1,240,000 and claimant continued to pay taxes based on that assessment is evidence that the property had more than nominal value.
Discussion
Although not denominated as such, the City’s motion to dismiss is essentially a motion for summary judgment on the grounds that the claimant’s appraisal does not use a valid method of valuation, and since claimant is limited to the facts and opinions set forth in the appraisal there is no admissible evidence to support its claim.
It is well established that a party moving for summary judgment must make a prima facie showing of entitlement as a matter of law, offering sufficient evidence to demonstrate the absence of any material issues of fact. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].)
Once there is a prima facie showing, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish material issues of fact which require a trial of action. (Zuckerman v City of New York, 49 NY2d 557 [1980]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986].)
When considering a summary judgment motion the court is required to accept the plaintiffs evidence as true and give it the benefit of “every reasonable inference which can reasonably be drawn from that evidence.” (Secof v Greens Condominium, 158 AD2d 591, 593 [1990], citing Goldstein v Hauptman, 131 AD2d 724 [1987].)
Further, since both the City and the claimant at trial are limited in their affirmative proof to matters set forth in the ap *590 praisal reports (22 NYCRR 202.61 [e]), the parties are limited to the matters set forth in the appraisal reports exchanged in supporting and opposing this motion.
In a condemnation proceeding, the burden of proof remains upon the claimant but the State has an independent obligation to pay just compensation and, in connection therewith, to present its own appraisal of the property’s highest use and value. (Chase Manhattan Bank v State of New York, 103 AD2d 211, 221 [2d Dept 1984].)
In this case where the City contends the land has no value, to prevail on its motion, the City must show not only that the claimant’s appraisal is invalid as a matter of law but also that there is no factual question that the property is without value. A condemnation proceeding is not a private litigation. There is a constitutional mandate for the court to give just and fair compensation for property taken. (Yaphank Dev. Co. Inc. v County of Suffolk, 203 AD2d 280 [2d Dept 1994].)
The property must be valued at the highest and best use to which it could legally be put on the date of vesting. It is undisputed that on the date of vesting the property was subject to a restrictive declaration. The parties dispute whether on the date of vesting the restrictions could be considered permanent or temporary.
By the terms of the declaration, the restrictions remain in place until the City builds a storm water outlet to serve the property. On the date of vesting, such outlet had not been built; therefore, as of the vesting date the property could not be developed without constructing an alternate subsurface water detention facility.
The City’s appraisal report concludes that the costs of constructing a subsurface facility would be prohibitively expensive. Claimant does not rebut that opinion but contends that the highest and best use of the property was not to develop it as restricted, but as a speculative investment on the expectation that the restrictions would be lifted in the future.
Claimant has offered some evidence that there is a reasonable expectation that the City might construct a storm water outlet, in the form of the City’s drainage plan for District TD6, which claimant states shows that on the date of vesting the storm sewers were planned for the site. The City adduced no admissible evidence that the City would not at a future date construct a storm water outlet.
*591 Statements by the City’s attorneys, that “Prior to vesting it was determined that it was infeasible to build a storm water system in the area surrounding the subject property,” are inadmissible hearsay. Similarly, statements by the attorneys that such a system would be “very difficult if not impossible to build” are inadmissible.
It was impossible to know on the date of vesting whether or when the City would construct a storm water outlet. However, the more relevant question is, would a willing buyer, on the date of vesting, have purchased the property which could not then be developed, on the expectation that the City might one day construct the storm water outlet? On this the parties’ experts disagree.
The fact that the property could not be developed at the time of vesting does not preclude the possibility that a buyer would purchase it on the expectation that in the future the City might build the storm water outlet, thereby lifting the restrictions.
Likewise, the fact that it was uncertain whether the City would ever build the storm water outlet does not by itself mean that no one would purchase the property.
An analogous situation is where someone buys property subject to wetlands restrictions or zoning limitations, with the expectation that they can either get a permit to build or have the regulations held to be a regulatory taking.
Wetlands properties are not deemed to be valueless because they cannot be developed on the date of vesting. Such properties are valued for condemnation purposes as restricted, but an increment in valuation is calculated for the reasonable probability that the buyer might be able to negotiate a permit or have the regulations declared unconstitutional. {Berwick v State of New York, 107 AD2d 79 [2d Dept 1985]; Chase Manhattan Bank v State of New York, 103 AD2d 211 [1984].)
Where a claimant can show a reasonable probability that, absent the condemnation, a higher or more productive use of the property would have been available by reason of a legislative rezoning or a judicial declaration of invalidity of the use restrictions, the value of the property as zoned or restricted on the day of taking will be augmented by an increment representing the premium a knowledgeable buyer would be willing to pay for a potential change to a more valuable use. {Chase Manhattan Bank v State of New York, 103 AD2d 211, 217 [1984].)
*592 A claimant alleging that a legal restriction on the use of the property may be removed bears the burden of proving that a variance or permit would be granted, and must show that the lifting of the restriction is not merely a possibility but a reasonable probability. (County of Westchester v State of New York, 127 AD2d 556 [2d Dept 1987]; Rodman v State of New York, 109 AD2d 737 [2d Dept 1985].)
In this summary judgment motion the City bears the burden of showing that it was not reasonably probable that the restrictions in the declaration would be lifted in the near future. (Matter of City of New York, 21 Misc 3d 1127[A], 2008 NY Slip Op 52253[U] [Sup Ct, Kings County 2008].)
Given the differing opinions of the parties’ appraisers, the fact that the City’s drainage plan on the date of vesting included storm water sewers for the property, together with the lack of admissible evidence that the City would not build the sewers, the City has not sustained its burden of showing that it was not reasonably probable that the restrictions in the declaration would cease in the near future.
The City’s argument that valuing a property as a speculative investment is an unacceptable appraisal practice is misplaced. Speculation is a part of the overwhelming majority of commercial real estate transactions in New York City. One could say that speculation is the organizing principle of real estate investment in this City. It cannot be said as a matter of law that investors never buy properties which have no current profitable use on the expectation that restrictions may be lifted or special permits obtained.
There is a question of fact as to whether on the date of vesting a buyer would have purchased this property as a speculative investment.
This leaves the question of how to determine how much a willing buyer would have paid for the property in the expectation that the City might build the sewers in the near future.
What is unusual about this property is that it is essentially an all or nothing proposition, in that if the restrictive declaration were not lifted, then there would be no profitable use to which the property could be put. Further, unlike a wetlands regulated property, there is no possibility of having the restrictions declared an unconstitutional taking, since they are not the product of government regulation.
The City argued that claimant’s appraisal is invalid because none of the comparable sales used involved properties with sim *593 ilar restrictive declarations. However, the City’s appraiser admits in his rebuttal that none of the comparable sales he used in his appraisal for the City involved properties with similar restrictions “as none appear to exist.”
While this lack of comparable sales may be evidence of a lack of demand or market for such properties, it also may simply mean that it is a uniquely situated property. This question is a matter to be explored though the testimony and cross-examination of the parties’ experts.
More to the point, however, is that the claimant’s appraiser used the sales of properties comparable to the damage parcel as unrestricted, not to directly value the property, but as part of the analysis for determining the increment to the value of the property as restricted that a buyer would pay.
The claimant’s appraiser determined the value of the property as unrestricted by comparing the values of properties in the vicinity subject to the same zoning with the property and making the usual adjustments. Any differences of opinion that the City’s appraiser has with the comparability of the sales or the adjustments of the sales are questions of fact to be determined at trial.
The claimant’s appraiser calculated the increment that a buyer would pay at between 10%-20% of what he determined the value of the property would be if the restrictions were lifted. He then used 15% of the unrestricted value as the increment to the nominal value of the property as restricted that a buyer would pay.
The City attacks, as speculative, the appraiser’s determination that an investor would pay 10%-20% of the value of the property as unrestricted. While this approach does have a subjective component, it is inherent in determining what increment a buyer would pay in the expectation of an event that may or may not occur.
As in a wetlands analysis, part of the calculation is based on objective comparisons to similar but unrestricted properties. A knowledgeable buyer would not pay the full unrestricted value of such a property but rather a portion of its unrestricted value based on the probability that the restrictions could be lifted.
The probability of the City building a storm water sewer for this property, which is contingent on numerous factors and decisions of a variety of actors, can only be estimated subjectively. However, the fact that there is a subjective component to the analysis does not invalidate it.
*594 Appraisers routinely make adjustments for motivation, size, topography or marketing factors. The size of such adjustments, usually in multiples of 5% are subjective estimates often based on the experience of the appraiser.
While large adjustments raise questions since the greater the adjustment the less reliable the sale, the weight given adjustments is a matter to be determined at trial after the appraiser is subject to the crucible of cross-examination.
The City has failed to meet its burden of showing that no investor would purchase the property on the expectation that the restrictions would be lifted in the future, and that the property has no value.
Wherefore, the City’s motion to dismiss is denied.