CHASE MANHATTAN BANK, N. A., as Trustee under the Will of JOHN PARMENTIER, Deceased, Respondent, v STATE OF NEW YORK, Appellant.

Second Department, August 27, 1984

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Jeremiah Jochnowitz* and *Dennis Hurley* of counsel), for appellant.

*Shea & Gould (Thomas J. Johnson* of counsel), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

The central issue on this appeal is the proper valuation of classified wetlands taken in condemnation, where the claim is made that the restrictions upon the use of the wetlands are, themselves, confiscatory.

On June 20, 1978, claimant's property was appropriated for environmental purposes pursuant to ECL 3-0305. The property is located in the unincorporated Hamlet of Bayport, Town of Islip, Suffolk County, New York. It is

bounded on the north by Bay Avenue and private lands, on the east and south by Oak Road, and on the west by Seaman Avenue. Irregular in shape, this vacant and unimproved parcel totals approximately 5.91 acres, consisting of about 1.58 acres of upland on its borders, and about 4.33 acres of classified tidal wetlands. Its elevation ranges from 1.3 to 4.9 feet above sea level. Drainage on the site is poor. Mosquito ditches crisscross the site at several locations to permit drainage from properties lying to the north to flow off to the Brown's River area, southwest of the site. In addition, the property is subject to tidal flow by a culvert running under Seaman Avenue.

The parties posit opposite views as to the highest and best use of the property and, hence, its value on the day of taking. The claimant instructed its appraiser to value the parcel as if the New York State Tidal Wetlands Act (ECL art 25), as well as the Town of Islip Wetlands Law, did not exist. Based upon the Town of Islip's residential "A", approximately quarter-acre zoning of the site, claimant's appraiser concluded that its highest and best use was as a 16-plot residential subdivision. Employing both a direct sales comparison (market data) and a subdivision analysis approach, claimant's appraiser valued the property at $87,000. In contrast, the State instructed its appraiser to value the property in accordance with all legal restrictions on development, including the Tidal Wetlands Act. The State's appraiser concluded, after conversations with appropriate officials of the New York State Department of Environmental Conservation (hereinafter DEC), that permission to fill and develop the property with single-family residential dwellings was "not reasonably probable". Therefore, he was of the opinion that its highest and best use was recreational and that its value, on a direct sales approach, was $7,400.

The parties' widely divergent views on the property's highest use and value squarely confronted the Court of Claims with the issue of whether or not the property should be valued as restricted by the Tidal Wetlands Act.* The court accepted the State's appraisal of $7,400 as accu-

---

* The parties did not separately treat the effect of the Town of Islip Wetlands Law and, therefore, we shall not treat it separately either.

rately representing the market value of the property as restricted by the Tidal Wetlands Act. Concluding that the effect of the act was, therefore, to destroy all but a bare residue of the land's former value, the court declared it would value the property, for purposes of an award, as if the act did not apply. It did not, however, accept claimant's unrestricted appraisal of $87,000. Rather, it rejected some of claimant's comparable sales, made different adjustments as to the remainder, found a total market value of $53,781, and awarded judgment to the claimant for that sum, with interest.

On appeal, the State argues that the Court of Claims erred in valuing the subject property as if the Tidal Wetlands Act did not exist. It contends that the effect of the act upon the property cannot be meaningfully assessed until the claimant has followed the permit procedure set forth in the Tidal Wetlands Act — i.e., apply for a permit for some intended use, and upon denial, establish by evidentiary proof that the property cannot produce a reasonable economic return under any permissible use. The State further contends that in the absence of such permit application and proof of confiscation, the property should have been valued as tidal wetlands subject to the restrictions of the Tidal Wetlands Act. The State also challenges the court's valuation on the ground the comparable sales relied upon were not, in fact, comparable. Rather, they consisted of much larger acreage and were allegedly dry, contained no marshland and were not subject to a drainage easement or tidal flow.

Claimant contends that the State's argument elevates form over substance. Since the State had unilaterally decided to take title to the property, a permit application by claimant at that time would have been an utterly futile act. Further, the State's own appraiser believed that the highest and best use of the property was recreational, while claimant's appraiser believed that residential development was both physically and economically feasible. Hence, it is claimant's view that the Tidal Wetlands Act rendered the land economically useless and is therefore confiscatory. On the issue of comparable sales parcels, claimant urges that the sales relied upon by the court were

far more comparable to the subject property than the State's sales and that any differences were appropriately adjusted for by the court.

We agree with the State that the Court of Claims erred in valuing the subject property as if the Tidal Wetlands Act had been successfully directly attacked prior to the date of taking, though not for the reasons stated. In our view, the error lies in the court's failure to value the property as restricted by said act, with an increment for the reasonable probability of a successful judicial challenge to the act's application as confiscatory. We, therefore, reverse the judgment appealed from and remit the matter to the Court of Claims for a hearing and determination on the issue of the amount of the increment to be awarded claimant.

The Tidal Wetlands Act, enacted in 1973, was designed to "preserve and protect tidal wetlands, and to prevent their despoliation and destruction, giving due consideration to the reasonable economic and social development of the state" (ECL 25-0102). Tidal wetlands were found by the Legislature to constitute "one of the most vital and productive areas of our natural world" and their "protection and preservation" was held to be "essential" (L 1973, ch 790, § 1). Properties designated by the Commissioner of Environmental Conservation as tidal wetlands of the State (ECL 25-0201), just as those designated freshwater wetlands (ECL 24-0301 et seq.), are subject to "rigorous regulation" (cf. Spears v Berle, 48 NY2d 254, 260). Any form of dredging or filling, or the erection of any structures within or immediately adjacent to inventoried wetlands which may substantially impair or alter the natural condition of a tidal wetland area is prohibited without a permit (ECL 25-0401, subds 1, 2), and to get a permit, an applicant must demonstrate that the proposed activity will be "in complete accord with the policy and provisions" of the act (ECL 25-0402, subd 1).

Since wetlands restrictions are far more stringent than zoning regulations — restricting development per se as opposed to restricting types of uses — the Legislature has provided the property owner with a remedy against an unconstitutional taking within the context of the regulatory scheme itself. Thus, if a permit is denied or the permit

offered is more limited in scope than that sought, the owner may seek judicial review of the administrative denial (ECL 25-0404). This review proceeding is unique in that a determination sustaining the permit denial, as supported by substantial evidence, will then trigger a second determination in the same proceeding as to whether this developmental restriction constitutes an unconstitutional taking without compensation (ECL 25-0404). This second determination will be made on the basis of a full evidentiary hearing and, if a taking is found, the commissioner will be directed, at his option, to either grant the requested permit or institute condemnation proceedings (ECL 25-0404; cf. *Spears v Berle, supra,* p 261).

In practical effect then, the statutory scheme permits a declaratory judgment action within the context of a CPLR article 78 administrative review proceeding. To establish an unconstitutional taking, the landowner is required to prove, by " 'dollars and cents' evidence as to the economic return that could be realized under each permitted use", that "under no permissible use would the parcel as a whole be capable of producing a reasonable return" (*Spears v Berle, supra,* p 263). If it be shown that the economic value of the parcel, or all but a bare residue of that value, has been destroyed by application of the wetlands regulations, the uncompensated taking cannot stand (*Spears v Berle, supra,* p 263).

However, what happens if, as here, the State unilaterally chooses to condemn a wetlands parcel before the owner has sought a permit for its development or secured a judicial determination as to the confiscatory effect of a denial? The State argues that claimant could not secure, and the court could not make, a determination that application of the Tidal Wetlands Act had destroyed the economic value of the property unless and until claimant followed the procedure of the act; i.e., applied for a permit and, upon its denial, established at an evidentiary hearing that no other adaptable use would be allowed and that no as-of-right use would produce a reasonable economic return on the property. To the extent that the State seeks to preclude any consideration by the condemnation court of claimant's allegations of confiscation, we disagree.

We note first that the State's argument appears to be an afterthought. Nowhere in this record is there any indication that the State deemed compliance with the permit and review procedures of the Tidal Wetlands Act a condition precedent to a confiscation determination in the condemnation proceeding. On the contrary, the State made it clear, in objecting to a question addressed to claimant's property manager as to whether it had ever applied for a permit, that it was not faulting claimant for not going forward with the permit process.

In any event, we find the State's argument unsupportable. The property taken must be valued in accordance with the highest and best use for which it is adaptable and available, even though the owner may not have been utilizing it to its fullest potential on the day of taking (*Matter of Town of Islip* [*Mascioli*], 49 NY2d 354, 360). Further, where there exists a probability of a rezoning to a higher use or of a successful judicial challenge to the zoning regulations, or of securing a valuable environmental permit, the value of the property must be adjusted accordingly by the condemnation court (*Matter of Town of Islip* [*Mascioli*], *supra,* pp 360-361; *Lake County Forest Preserve Dist. v Petersen,* 93 Ill App 3d 731). Similarly, at bar, claimant has sought to establish that the Tidal Wetlands Act is invalid as applied to its property because it is confiscatory. (The propriety of such a collateral attack on a land use restriction in a condemnation proceeding will be discussed *infra.*) Since the same evidentiary "dollars and cents" proof mandated by the court in *Spears v Berle* (*supra*) to prove confiscation in CPLR article 78 proceedings reviewing wetlands permit denials may be required of a claimant in State initiated condemnation proceedings (indeed "dollars and cents" evidence has always been the very essence of a condemnation proceeding), the State's unreasoned present insistence on duplicative administrative and judicial proceedings would appear to unjustifiably exalt form over substance.

Although not directly raised by the parties herein, the more serious question remaining is the propriety of a collateral attack on the developmental restrictions of the Tidal Wetlands Act and the consequences of a successful challenge.

Generally, just compensation for property taken in condemnation is determined by market value at the time of appropriation. Hence, the property must be valued as legally restricted in use by all zoning and environmental regulations in existence at the time of taking (*Matter of Town of Islip* [*Mascioli*], *supra,* p 360). However, as noted, a claimant may take the position that, absent the condemnation, a higher or more productive use of the property would have been available by reason of a legislative rezoning or a judicial declaration of invalidity of the use restriction. If the claimant proves a reasonable probability of such a rezoning or declaration of invalidity, the value of the property as zoned or restricted on the day of taking will be augmented by an increment, representing the premium a knowledgeable buyer would be willing to pay for a potential change to a more valuable use (*Matter of Town of Islip* [*Mascioli*], *supra,* pp 360-361). At bar, neither the parties nor the court invoked the reasonable probability — incremental increase rule. Rather, an all-or-nothing approach was embraced, resulting, upon proof to the court's satisfaction of the confiscatory effect of the Tidal Wetlands Act upon claimant's property, in an award valuing the property as if the Tidal Wetlands Act had never existed.

The reasonable probability — incremental increase rule has its genesis in the rule against collateral attack of land use restrictions in condemnation proceedings. Thus, where, for example, a State or a county condemns property which is subject to a restrictive town zoning law, it has been held that the claimant may not directly challenge the town zoning law as confiscatory in a condemnation proceeding to which the town is not a party (see *State ex rel. State Highway Comm. v Graeler,* 527 SW2d 421 [Mo]; *Linge v Iowa State Highway Comm.,* 260 Iowa 1226; *Robinson v Commonwealth,* 335 Mass 630). Other courts have held that even if the zoning authority is a party to the condemnation proceeding, the only proper method for challenging a zoning ordinance is by direct attack, such as a declaratory judgment action (see *Matter of County of Westchester* [*MacEwen*], 237 App Div 833; *Overpeck Land Corp. v Village of Ridgefield Park,* 104 NJL 402; but see *Board of Comrs. v Tallahassee Bank & Trust Co.,* 108 So 2d 74

[Fla]). Of course, under either theory, it is only valuation of the property as if unrestricted or unzoned which is proscribed; a proven reasonable probability of a successful challenge to the validity of the restrictions or zoning will command an increment above existing value if a knowledgeable buyer would pay a higher price therefor (see, e.g., *State ex rel. State Highway Comm. v Graeler,* 527 SW2d 421, *supra*)

At bar, the condemnor and the pertinent regulatory authority are one and the same — the State of New York. In recent years, several courts have concluded that this circumstance obviates the justification for the collateral attack prohibition and permits valuation of the property as if unrestricted or unzoned (see, e.g., *Business Ventures v Iowa City,* 234 NW2d 376 [Iowa], and cases cited therein). As noted by one court: "It is practical and logical to require that such invalid zoning be disregarded where the zoning authority is also the condemnor. Permitting recovery in eminent domain disregarding the zoning restriction combines in one action the right to recover compensation for both the inverse condemnation resulting from the disguised taking in the form of zoning and for the actual taking of the property. The process avoids separating the matter into two causes involving the same subject matter and the same parties. Moreover, the condemning authority is also the zoning government so that much of the vice of a collateral attack on zoning in the usual eminent domain proceeding is not present" (*People ex rel. Dept. of Public Works v Southern Pacific Transp. Co.,* 33 Cal App 3d 966).

Notwithstanding the State's posture in this proceeding as both condemnor and regulatory authority, we hold that the reasonable probability-incremental increase rule is still applicable (cf. *Matter of Town of Islip [Mascioli],* 49 NY2d 354, 361, n 2, *supra; Matter of City of New York [Nelkin],* 51 NY2d 921). Those cases allowing valuation of the appropriated property as if already rezoned or unzoned have dealt almost exclusively with zoning restrictions enacted or retained to depress property values in order to minimize the costs of acquisition in anticipated condemnation proceedings (see *Board of Comrs. v Tallahassee Bank & Trust Co.,* 108 So 2d 74, *supra;* see, also, 4 Nichols,

Eminent Domain [rev 3d ed], § 12.322[1], p 12-660). That is certainly not the situation here, and is not even suggested by claimant. Nor do we see any justification for awarding claimant a windfall. Common sense dictates that a knowledgeable buyer would not have paid claimant the full unrestricted residential value of its parcel on the day of taking, when the wetland restrictions were still legally in effect. The cost in time and money of applying for a permit and challenging in court any denial as confiscatory would naturally be taken into account by any purchaser even if there appeared to be an excellent chance of ultimate success. Hence, a showing that a challenge to the application of the Tidal Wetlands Act as confiscatory would have, at least, a reasonable probability of success in court should beget only an incremental increase in the value of the appropriated property as restricted.

A word should now be said about the nature of the proof to be adduced by the parties and the focus of the court upon remittal of this action. In the case of condemnation of inventoried wetlands, the court must ascertain, in the first instance, whether or not the Commissioner of Environmental Conservation would have granted a permit for development, and, if so, how limited that permit would have been. The conclusion arrived at will help determine the confiscation issue and reflect directly on the value determination to be made. The information itself must obviously be provided by the parties through proof to be adduced at trial in accordance with the dictates of *Spears v Berle* (48 NY2d 254, 263, n 4, *supra*).

Turning now to the specific finding of confiscation at bar, it appears from its memorandum opinion that the Court of Claims simply relied upon the State's appraiser's depressed valuation of the property as restricted by the Tidal Wetlands Act to demonstrate destruction of the parcel's former unrestricted economic value. Without more, such reliance would seem unjustified and constitute reversible error. However, the record as a whole indicates that the court's conclusion, translated into reasonable probability terms, was, ultimately, correct and that, in truth, all the necessary evidence was before the court. This is so because the State (1) essentially conceded, through its principal

witness, that it was highly improbable any permit for a use other than recreational would be issued, thus rendering unnecessary any other proof on this issue, and (2) failed to effectively counter claimant's evidence as to the economic feasibility of developing the property as a residential subdivision.

More specifically, claimant's appraiser, John O'Rourke, valued the subject property at $87,000 as of June 20, 1978, the date of taking, based upon its residential zoning and an engineer's report that it could be subdivided into 16 residential plots. O'Rourke used both a direct-sale comparison approach (the price a developer would pay) and a subdivision or development approach (finished lot sales minus development costs). As previously noted, the developmental restrictions of the Tidal Wetlands Act were totally ignored. The State's appraiser, Richard Marchitelli, valued the property at $7,400 as of the date of vesting, in accordance with the strictures of the Tidal Wetlands Act. Although Marchitelli also believed that there was a "strong likelihood" residential development of the property could not be economically justified, he found the need to determine that issue obviated by the fact that such development was legally restricted. "Based upon conversations with appropriate DEC officials, [Marchitelli] concluded that permission to residentially develop the subject is not reasonably probable". Hence, the highest and best use of the property was deemed recreational and its value as such based upon the comparable direct-sale approach.

Considering the above evidence in light of the evidentiary standard set forth in *Spears v Berle* (*supra*), it is clear that the record does contain sufficient "dollars and cents" proof as to the economic return that could be realized under the permitted recreational use, i.e., the $7,400 market value assigned the property by the State's own appraiser. This assigned value for recreational use appears to cover all the uses permitted under both the Tidal Wetlands Act and the local zoning ordinance, such as recreational fishing and the harvesting of agricultural and horticultural products (see ECL 25-0401, subd 3). The State's newly raised contention that there may be other and presumably higher uses, such as a marina, which would produce a productive

return comes too late and ignores the fact that the Islip Town Zoning Ordinance does not permit commercial use of the property. Furthermore, that this "dollars and cents" evidence was submitted by the State rather than claimant is of no moment. The State's appraiser consulted with DEC officials and came away with the view that residential development of the parcel, in accordance with the local zoning, would not be approved. Presumably, claimant's appraiser would have come away with the same information had he consulted with DEC officials. If this is a situation of the State proving a part of the claimant's case for it, so be it. However, it must also be remembered that a wetlands CPLR article 78 review proceeding is not identical to a wetlands condemnation proceeding. In the former, the State's posture is far more defensive, amounting essentially to providing rebuttal of the petitioner's prima facie proof of confiscation. In a condemnation proceeding, the burden of proof remains upon the claimant (*Heyert v Orange & Rockland Utilities,* 17 NY2d 352) but the State has an independent obligation to pay just compensation and, in connection therewith, to present its own appraisal of the property's highest use and value (EDPL 303, 508). Thus, in understandably seeking to establish a lower market value than that proffered by the claimant, the State necessarily runs the risk of proving for the claimant at least one aspect of a claim of confiscation. Then, too, the critical issue in wetlands cases is probably not whether development of the property is legally feasible but, instead, whether it is economically feasible. On the latter issue the State is entirely free to counter the claimant's evidence without prejudice to its own case.

Accepting the State's appraisal as accurately indicating the subject property's market value as a result of regulation by the Tidal Wetlands Act, a conclusion concurred in by the Court of Claims and claimant but eschew d by the State on appeal, the next question is the proprie y of the court's finding as to the parcel's market value without regard to the act's strictures. The State argues that the Court of Claims adoption of three of claimant's comparable sales (sales Nos. 4, 6 and 7), consisting of waterfront parcels, as the best indicators of market value, was erroneous for the reason that they were not comparable as a

matter of law. Noncomparability is ascribed on the basis of the much larger size of the sales parcels (117 acres, 45.66 acres and 20 acres, respectively, compared to the subject 5.91 acres) and the alleged fact that they were not inventoried wetlands. The comparable sales parcels proffered by the State's appraiser, on the other hand, were all unimproved, residentially zoned wetlands of smaller size.

The suitability of comparable sales is a matter resting within the sound discretion of the trial court (see *Levin v State of New York,* 13 NY2d 87, 92), and there is adequate evidence in the record to support the court's adoption of claimant's comparables and its rejection of the State's comparables. Differences in the size of the comparables are proper subjects for adjustment and the court rejected the adjustment made by claimant's appraiser in this respect and made its own. As to topography, the simple fact is that the record is devoid of any testimony as to the topography of claimant's comparable sales. However, in his report, claimant's appraiser indicated the absence of any significant difference in topography between the claimant's property and the comparable sales in question, and, in any event, took into account the need for fill in his estimate of market value. Finally, the State's own comparable sales parcels lacked comparability insofar as they lacked road frontage and utilities and, in two instances, were entirely landlocked. Indeed, the State's four comparable sales were selected for the very reason that they were wetlands incapable of legal or economic development.

A more significant issue is whether residential development of the subject parcel is, in fact, economically feasible. Concededly, the Suffolk County Department of Health Services standard would require the deposit of fill on this property to a depth of at least six feet above the existing ground water table in order to allow for the installation of a shallow leaching sanitary system. Such fill is expensive and overall land development costs were estimated by claimant's engineer at $100,600. Still, claimant's appraiser and engineer concluded that residential development of the property was both physically and economically feasible. The State claims that this conclusion is unsupportable and that weak market demand for housing at the time of

vesting, coupled with excessive development costs, rendered development uneconomical. The State's appraiser did testify that the subject property was affected by a weak market for residential development and would be "costly to develop". His appraisal report speaks of a "strong likelihood that such development cannot be economically justified". However, he also states, in his report, that he cannot express an opinion with absolute certainty without an engineering report and that there is no need to address the question of economic feasibility since development is not legally feasible. Claimant, on the other hand, engaged an engineer (Frederick E. Wood) who concluded that the site could be developed as a small conforming residential subdivision at a total cost of $6,288 per plot, leaving a natural drainage area of 1.4 acres in the center of the parcel. Cross-examination of claimant's appraiser and engineer by the State on the issue of economic feasibility was far from pointed.

The Court of Claims agreed with the State's view that the market for homes in the area of the subject parcel was depressed at the time of taking, and adjusted claimant's comparables accordingly. But it also inferentially agreed with claimant's contention that residential development of this waterfront parcel was economically feasible as it found a market value, for residential use, of $53,781. While there may remain nagging doubt as to the economic feasibility of developing this parcel, we cannot say that the court's finding of feasibility was contrary to the evidence. Indeed, on the state of the record before us, it is not clear that the court could properly have held otherwise.

Finally, we emphasize, that contrary to the Court of Claims formulation, the issue of confiscation can only be determined by a comparison of before and after values — i.e., market value without regard to the developmental restrictions of the Tidal Wetlands Act and market value as so restricted. Thus, the question is whether a reduction in market value from $53,781, for residential use, to $7,400, for recreational use, could be found by a court to constitute destruction of the property's economic value, or all but a bare residue of the value. The effect of the act, on this record, having been to deprive claimant of all financially

rewarding uses of its property and to reduce the property's value by approximately 86%, we find that claimant carried its burden of proving that a constitutional challenge to the act as applied to the subject property would have, at least, a reasonable probability of success in court. However, since such a showing does not entitle claimant to have its property valued as if application of the act had already been judicially declared confiscatory prior to the date of taking, we must vacate claimant's award of the full unrestricted residential value.

The judgment appealed from should be reversed, on the law, without costs or disbursements, and the matter should be remitted to the Court of Claims, for a new hearing limited solely to the amount of any increment, above the restricted recreational value, which a knowledgeable buyer would pay in light of the reasonable probability of a successful constitutional court challenge. Based upon the new evidence to be adduced and the recreational and residential values already found, the Court of Claims should then make a new determination as to the proper award in condemnation.

MOLLEN, P. J., LAZER, THOMPSON and O'CONNOR, JJ., concur.

Judgment of the Court of Claims, dated June 2, 1982, reversed, on the law, without costs or disbursements, and matter remitted to the Court of Claims for further proceedings in accordance with the *Per Curiam* opinion herewith.