■ In the Matter of NEW CREEK BLUEBELT, PHASE 4. LAWRENCE N. PAOLELLA et al., Respondents-Appellants; CITY OF NEW YORK, Appellant-Respondent. [997 NYS2d 447]—

In a condemnation proceeding, the condemnor, City of New York, appeals, as limited by its brief, from so much of a first separate and partial final decree of the Supreme Court, Richmond County (Saitta, J.), dated June 6, 2012, as, upon a decision of the same court dated May 7, 2012, made after a nonjury trial, determined that there was a reasonable probability that the imposition of wetlands regulations on the subject real property constituted a regulatory taking and applied an increment of 75% in calculating the final condemnation award, and the claimants, Lawrence N. Paolella and Liana Paolella, cross-

appeal, as limited by their brief, from so much of the same first separate and partial final decree, as applied extraordinary development costs of $723,000 in calculating the final condemnation award, and awarded them the principal sum of only $810,000 as just compensation for the taking of their real property.

Ordered that the first separate and partial final decree is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

Lawrence N. Paolella and Liana Paolella (hereinafter together the claimants) were the owners of a vacant, unimproved, 19,500-square-foot property on Staten Island. Sometime after they acquired title, the entire property was designated as wetlands, and on June 11, 2007, the City of New York, as part of its New Creek Bluebelt, Phase 4 project, acquired the property from the claimants. The claimants commenced this action against the City, seeking $1,090,000 as just compensation for the regulatory taking resulting from the wetlands regulations imposed on the property.

A nonjury trial was held, after which the Supreme Court held, in pertinent part, that: (1) the claimants established a reasonable probability that the imposition of the wetlands regulations on the property constituted a regulatory taking; (2) in calculating the final condemnation award, it would apply the 75% increment sought by the claimants, not the approximately 41% increment sought by the City; (3) in calculating the final condemnation award, it would apply, as extraordinary development costs, the sum of $723,000 sought by the City, not the sum of $62,000 sought by the claimants; and (4) the final condemnation award to which the claimants were entitled was $810,000.

The City challenges the Supreme Court's determinations that a reasonable probability existed that the imposition of the wetlands regulations on the property constituted a regulatory taking, and that the application of a 75% increment in calculating the final condemnation award was appropriate. The claimants challenge the court's determinations to accept the City's estimate of extraordinary development costs in the sum of $723,000, and that they were entitled to a final condemnation award of only $810,000.

In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and we may render a judgment we find warranted by the facts, bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Yu Ling Hu*

*v Zapas*, 108 AD3d 621 [2013]; *Pernell v 287 Albany Ave., LLC*, 95 AD3d 1094 [2012]).

In a condemnation proceeding, a property restricted by wetlands regulations is valued pursuant to the restrictions imposed by the wetlands regulations at the time of the taking, unless the claimant can demonstrate a reasonable probability that "a higher or more productive use of the property would have been available by reason of a legislative rezoning or a judicial declaration of invalidity of the use restriction" (*Chase Manhattan Bank v State of New York*, 103 AD2d 211, 217 [1984]; *see Berwick v State of New York*, 107 AD2d 79, 84 [1985]). "A landowner who claims that land regulation has effected a taking of his [or her] property bears the heavy burden of overcoming the presumption of constitutionality that attaches to the regulation and of proving every element of his [or her] claim beyond a reasonable doubt" (*de St. Aubin v Flacke*, 68 NY2d 66, 76 [1986]; *see Adrian v Town of Yorktown*, 83 AD3d 746 [2011]; *Matter of Friedenburg v New York State Dept. of Envtl. Conservation*, 3 AD3d 86, 92 [2003]).

Generally, while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking (*see Lingle v Chevron U. S. A. Inc.*, 544 US 528, 537-538 [2005]; *Pennsylvania Coal Co. v Mahon*, 260 US 393, 415 [1922]). Analysis of whether nonpossessory governmental regulation of property has gone so far as to constitute a taking involves factual inquires in which three factors of particular significance have been identified: (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action" (*Penn Central Transp. Co. v New York City*, 438 US 104, 124 [1978]; *see Lingle v Chevron U. S. A. Inc.*, 544 US at 538-539; *Yee v Escondido*, 503 US 519, 522-523 [1992]; *Matter of Friedenburg v New York State Dept. of Envtl. Conservation*, 3 AD3d at 95-96).

As to the first factor, "the property owner must show by 'dollars and cents' evidence that under no use permitted by the regulation under attack would the properties be capable of producing a reasonable return; the economic value, or all but a bare residue of the economic value, of the parcels must have been destroyed by the regulations at issue" (*de St. Aubin v Flacke*, 68 NY2d at 77; *see Spears v Berle*, 48 NY2d 254, 262-263 [1979]; *Chase Manhattan Bank v State of New York*, 103 AD2d at 215). Accordingly, standing alone, a serious and significant diminution of property value will typically not be deemed to constitute a regulatory taking (*see Concrete Pipe & Products*

*of Cal., Inc. v Construction Laborers Pension Trust for Southern Cal.*, 508 US 602, 645 [1993]; *Noghrey v Town of Brookhaven*, 92 AD3d 851, 853 [2012]; *Noghrey v Town of Brookhaven*, 48 AD3d 529, 531-532 [2008]).

Here, the trial court accepted the estimate of the City's expert appraiser that the wetlands regulations reduced the value of the property by 82%, a diminution which, standing alone, is within the range generally found to be insufficient to constitute a regulatory taking (*see e.g. Village of Euclid v Ambler Realty Co.*, 272 US 365 [1926] [75% reduction]; *Florida Rock Indus., Inc. v United States*, 18 F3d 1560, 1567 [Fed Cir 1994] [62% reduction]; *Adrian v Town of Yorktown*, 83 AD3d 746 [2011] [64% reduction]; *cf. Matter of Friedenburg v New York State Dept. of Envtl. Conservation*, 3 AD3d at 95 [95% reduction was a regulatory taking]).

Although the claimants admit that, at trial, they did not set forth any evidence with respect to the second factor (*see Matter of Gazza v New York State Dept. of Envtl. Conservation*, 217 AD2d 202, 211 [1995], *affd* 89 NY2d 603 [1997]), under the circumstances presented here, such an omission is not fatal to their claim, especially upon consideration of the third factor. Under the third factor, generally, a property owner "must establish that the regulation attacked so restricts his [or her] property that he [or she] is precluded from using it for any purpose for which it is reasonably adapted" (*de St. Aubin v Flacke*, 68 NY2d at 77).

Here, the parties agree that, because of the wetlands regulations, it is highly improbable that the New York State Department of Environmental Conservation would issue a permit to develop the property in accordance with the applicable R3-1 zoning, which allows for attached and semi-attached one- and two- family dwellings, and that, accordingly, the highest and best use of the property is to leave it undeveloped and vacant. Thus, although the purpose of the wetlands regulations benefits the public good by providing flood prevention and mitigation, the wetlands regulations effectively prevent any economically beneficial use of the property (*see id.*).

Considering the 82% property value diminution estimated by the City as a result of the wetlands regulations, together with the effective prohibition on development of any part of the property effectuated by the wetlands regulations, we agree with the Supreme Court that the claimants established that there was a reasonable probability that the imposition of the wetlands regulations constituted a regulatory taking of the subject property (*see Berwick v State of New York*, 107 AD2d at 89-91; *Chase*

*Manhattan Bank v State of New York*, 103 AD2d at 223-224; *cf. Putnam County Natl. Bank v City of New York*, 37 AD3d 575, 576-577 [2007]).

The increment above the regulated value of the property that must be added to the regulated value of the property is a percentage that represents the premium a reasonable buyer would pay for the probability of a successful judicial determination that the regulations were confiscatory (*see Berwick v State of New York*, 107 AD2d at 84; *Chase Manhattan Bank v State of New York*, 103 AD2d at 217). When adding an increment to the value of vacant land to reflect its development potential, the specific increment which is selected and applied must be based on sufficient evidence and be satisfactorily explained (*see Matter of County of Suffolk [Firester]*, 37 NY2d 649, 653 [1975]; *Matter of Village of Haverstraw [AAA Electricians, Inc.]*, 114 AD3d 955, 956 [2014]).

Here, the 75% increment applied by the Supreme Court was based on sufficient evidence. The claimants' appraiser, who proposed the use of such increment and applied it in his calculations of the subject property's value, set forth the requisite "statement of the method of appraisal relied on and the conclusions as to value reached by the expert, together with the facts, figures and calculations by which the conclusions were reached" (22 NYCRR 202.60 [g] [3]; *see* 22 NYCRR 202.61 [a] [1]). We have previously applied the 75% increment in similar circumstances (*see Estate of Berwick v State of New York*, 159 AD2d 544 [1990]). While a prior application of this increment, standing alone, is insufficient to justify its application in this case, its use is appropriate under the circumstances of this case. We agree with the Supreme Court's rejection of the City's proffered $343,000 (approximately 41%) increment, as it lacks a sound, evidentiary basis. Among other things, the City's expert effectively disavowed his estimated increment of $343,000 at trial, when he acknowledged that it was not based on the realities of the marketplace.

We do not disturb the Supreme Court's acceptance of the estimate of the City's expert land use planner that extraordinary costs to develop the property would total $723,000. The Supreme Court had the discretion to determine that the City's expert land use planner was qualified to testify on the issue of extraordinary costs, and we find no serious mistake, error of law, or abuse of discretion sufficient to disturb that determination (*see Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 398-399 [1941]; *Board of Mgrs. of 195 Hudson St. Condominium v 195 Hudson St. Assoc., LLC*, 63 AD3d 523, 524 [2009]). The

claimants' contention that the City's expert lacked the expertise and knowledge needed to estimate extraordinary costs goes to the weight of the evidence, not its admissibility (*see Meiselman v Crown Hgts. Hosp.*, 285 NY at 398; *Board of Mgrs. of 195 Hudson St. Condominium v 195 Hudson St. Assoc., LLC*, 63 AD3d at 524). Further, the Supreme Court's determination to credit the estimate of extraordinary costs provided by the City's expert is supported by the record. Accordingly, we affirm the final condemnation award in the principal sum of $810,000 as just compensation for the taking of the claimants' real property. Skelos, J.P., Dillon, Maltese and Barros, JJ., concur. **[Prior Case History: 35 Misc 3d 1224(A), 2012 NY Slip Op 50851(U).]**