[65 NYS3d 552]

In the Matter of New Creek Bluebelt, Phase 3. Baycrest Manor, Inc., Respondent; City of New York, Appellant.

Second Department, November 15, 2017

164

**APPEARANCES OF COUNSEL**

*Zachary W. Carter, Corporation Counsel*, New York City (*Rochelle Cohen, Michael Chestnov* and *Adam Dembrow* of counsel), for appellant.

*Goldstein, Rikon, Rikon & Houghton, P.C.*, New York City (*Jonathan Houghton* of counsel), for respondent.

**OPINION OF THE COURT**

LEVENTHAL, J.P.

An owner whose property has been taken in condemnation is entitled to "just compensation" (US Const 5th Amend). At issue on this appeal is how to determine just compensation when the property at issue is subject to wetlands regulations that restrict its development. In *Chase Manhattan Bank v State of New York* (103 AD2d 211 [1984]), this Court held that property taken in condemnation must be valued as restricted in use by wetlands regulations, but that an owner who could prove a reasonable probability of successfully challenging the application of the regulations as an unconstitutional taking of its property would be entitled to an increment, representing the premium that a knowledgeable buyer would be willing to pay for a potential change to a more valuable use. On appeal, the City of New York, the condemnor of the subject property, contends that an owner of wetlands property taken in condemnation is no longer entitled to such an increment because *Chase Manhattan Bank* has been implicitly overruled by Court of Appeals cases that effectively bar a buyer of regulated property from ever bringing a successful takings claim. Thus, the City

maintains that no knowledgeable buyer would be willing to pay a premium for the probability of a successful judicial determination that the regulations were confiscatory. For the reasons that follow, we hold that *Chase Manhattan Bank* remains good law, and that a "reasonable probability" increment may be included in valuing regulated wetlands properties where an owner makes an evidentiary showing of entitlement to it.

The claimant, Baycrest Manor, Inc., owned two contiguous unimproved lots, totaling more than 7,000 square feet, near the east shore of Staten Island. The claimant acquired title in the early 1970s and, subsequently, the majority of the property was designated as wetlands. On November 3, 2006, the City acquired the property from the claimant as part of a multi-phase project to manage stormwater along the New Creek Bluebelt.* Shortly after the City acquired title, the claimant commenced this proceeding seeking compensation for the taking.

The Supreme Court held a nonjury trial to determine the amount of compensation to be awarded to the claimant. Following the nonjury trial, in a fifth separate and partial final decree dated January 29, 2015, the court awarded the claimant the principal sum of $382,190.25, plus interest, as just compensation for the taking. The court calculated the amount of this award based on its conclusion that the claimant established that there was a reasonable probability that the imposition of the wetlands regulations on the property would be found to constitute an unconstitutional taking. As a result, the court decided that the claimant was entitled to an increment above the regulated value of the property, representing the premium a reasonable buyer would pay for the probability of a successful judicial determination that the regulations were confiscatory. The court found that the value of the property as if unrestricted was $490,587, and that the restricted value was $57,000, a difference of $433,587. The court found the 75% increment requested by the claimant to be appropriate, and awarded the claimant 75% of the $433,587 difference between the restricted and unrestricted value of the property, resulting in an award of $382,190.25.

The City appeals from stated portions of the fifth separate and partial final decree. We now modify the fifth separate and

---

\* *The Staten Island Bluebelt: A Natural Solution to Stormwater Management*, available at http://www.nyc.gov/html/dep/html/dep_projects/bluebelt.shtml (accessed Nov. 13, 2017).

partial final decree by reducing the principal sum awarded from \$382,190.25 to \$156,987.84, and, as so modified, we affirm the fifth separate and partial final decree insofar as appealed from, and remit the matter to the Supreme Court, Richmond County, for the entry of an appropriate amended fifth separate and partial final decree.

## In Valuing Regulated Wetlands Properties Taken in Condemnation, the Reasonable Probability Incremental Increase Rule Remains Good Law

An owner whose property has been taken in condemnation has a constitutional and statutory right to just compensation (*see* US Const 5th Amend; NY Const art I, § 7 [a]; EDPL 101). "Just compensation" is generally measured by the market value at the time of appropriation, i.e., "the price a willing buyer would have paid a willing seller for the property" (*Matter of Town of Islip [Mascioli]*, 49 NY2d 354, 360 [1980]). Applying this principle in our 1984 decision in *Chase Manhattan Bank*, this Court found that property taken in condemnation must be valued in accordance with all legal restrictions on its use at the time of taking, including the stringent development restrictions of the Tidal Wetlands Act (*see Chase Manhattan Bank v State of New York*, 103 AD2d at 214-217). However, we then recognized the possibility that a claimant "may take the position that, absent the condemnation, a higher or more productive use of the property would have been available by reason of a legislative rezoning or a judicial declaration of invalidity of the use restriction" (*id.* at 217). In such a case,

> "[i]f the claimant proves a reasonable probability of such a rezoning or declaration of invalidity, the value of the property as zoned or restricted on the day of taking will be augmented by an increment, representing the premium a knowledgeable buyer would be willing to pay for a potential change to a more valuable use" (*id.*).

This is called the "reasonable probability—incremental increase rule" (*id.*). This Court again relied on this rule in considering the proper valuation of wetlands property taken in condemnation in *Berwick v State of New York* (107 AD2d 79, 84 [1985]), and, more recently, in *Matter of New Cr. Bluebelt, Phase 4* (122 AD3d 859, 861 [2014]).

The City argues that *Chase* and *Berwick* have been implicitly overruled by several New York Court of Appeals cases which

bar the purchaser of a property already subject to wetlands regulation from successfully pursuing a regulatory takings claim. The City contends that since a subsequent purchaser cannot challenge a preexisting regulation as a taking, the "framework proposed by *Chase* and *Berwick*[ ] for determining compensation for the taking of regulated wetlands properties is incompatible with contemporary takings law and can no longer serve as a basis for applying an increment above the regulated values of such properties." Essentially, the City's argument is that in light of the Court of Appeals' decisions, no knowledgeable buyer would be willing to purchase the subject property at a price above its regulated value in the hope of successfully challenging the wetlands regulations as a taking. Accordingly, the City maintains that the claimant should not have been awarded any increment above the $57,000 market value of the property as restricted by wetlands regulations.

In support of its argument that the purchaser of property already subject to wetland regulations that restrict its use cannot successfully challenge the regulations as a taking, the City relies primarily upon the Court of Appeals' 1997 decision in *Matter of Gazza v New York State Dept. of Envtl. Conservation* (89 NY2d 603 [1997]). In that case, the petitioner purchased a parcel of residential property subject to wetlands regulations, and then sought a building variance to allow him to construct a single-family house. After the Department of Environmental Conservation denied his application, the petitioner commenced a proceeding to review its determination, contending that the denial of a building variance constituted a taking without just compensation. The Court of Appeals rejected the petitioner's argument that "the denial of a variance due to legislation enacted to preserve wetlands is a taking despite the fact that the legislation was fully enacted and in force when he purchased the property" (*id.* at 608).

In reaching its conclusion that no taking had occurred, the Court reasoned:

> "Our courts have long recognized that a property interest must exist before it may be 'taken' (*United States v Willow Riv. Co.*, 324 US 499, 502-503; *Bennett v Long Is. R.R. Co.*, 181 NY 431, 435). Neither may a taking claim be based upon property rights that have already been taken away from a landowner in favor of the public. For example, government may 'assert a permanent easement that was

a pre-existing limitation upon the landowner's title' (*Lucas v South Carolina Coastal Council*, 505 US [1003,] 1028-1029). Similarly, regulatory limitations that 'inhere in the title itself' will bind a purchaser (*id.*, at 1029). To paraphrase Supreme Court's ruling, the purchase of a 'bundle of rights' necessarily includes the acquisition of a bundle of limitations.

"Under a State's power of eminent domain, the legitimate exercise of police power to advance the general welfare may result in the redefinition of property interests in favor of the public. It is that redefinition of a landowner's title that can serve as the basis of a takings claim. Indeed, the United States and New York State Constitutions both provide that a private party must be compensated when such interests are 'taken' away so a landowner may look to the government for just compensation upon the destruction of a formerly owned property interest.

"However, once taken, those property interests are no longer owned by the private landowner and may not be sold by such party. Rather, a promulgated regulation forms part of the title to property as a preexisting rule of State law. While the remaining property interests may still be freely transferred by the landowner, a purchaser's title is necessarily limited to and by those property interests alone" (*Matter of Gazza v New York State Dept. of Envtl. Conservation*, 89 NY2d at 613-614).

The Court then held that the "petitioner's claim that the denial of his variance was a 'taking' must fail because he never owned an absolute right to build on his land without a variance" (*id.* at 615).

"Since the enactment of the wetland regulations, the only permissible uses for the subject property were dependent upon those regulations which were a legitimate exercise of police power. Petitioner cannot base a taking claim upon an interest he never owned. The relevant property interests owned by the petitioner are defined by those State laws enacted and in effect at the time he took title and they are not dependent on the timing of State action pursuant to such laws" (*id.* at 615-616).

The City also relies on the Court of Appeals' decision in *Soon Duck Kim v City of New York* (90 NY2d 1 [1997]), decided on the same day as *Gazza*. In *Soon Duck Kim*, the City regraded a public road. To maintain lateral support between the road and the plaintiffs' property, the City placed side fill on the portion of the plaintiffs' property abutting the roadway. The plaintiffs contended that they were entitled to compensation for the portion of their property taken by the City. The Court of Appeals disagreed. The Court reasoned,

> "[p]laintiffs acquired their property with constructive notice that the property abutted a public road that was below the legal grade. In regrading the road and raising a portion of plaintiffs' property up to the legal grade, the City acted pursuant to a long-standing common-law principle and in conformity with a provision of its Charter that was in force when plaintiffs acquired title to their property" (*id*. at 3-4).

Therefore, the Court concluded, "the City did not take any property interest from plaintiffs for which compensation is due" (*id*. at 4).

Continuing its analysis in *Soon Duck Kim*, the Court of Appeals determined that, by virtue of the common-law and City Charter obligation imposed on the City to maintain lateral support to a public roadway, the plaintiffs' title never encompassed the property interest they claimed had been taken. The Court explained:

> "The corpus juris of this State comprises constitutional law, statutory law and common law. To the extent that each of these sources establishes binding rules of property law, each plays a role in defining the rights and restrictions contained in a property owner's title. Therefore, in identifying the background rules of State property law that inhere in an owner's title, a court should look to the law in force, whatever its source, when the owner acquired the property (*see, Matter of Gazza v New York State Dept. of Envtl. Conservation*, 89 NY2d 603 [decided today] [enforcement of preexisting statutory wetlands restriction not a taking]; *Matter of Anello v Zoning Bd. of Appeals* [*of Vil. of Dobbs Ferry*], 89 NY2d 535 [decided today] [enforcement of preexisting steep-slope ordinance not a taking]). In this

case, we find applicable rules in the common law and in New York City's Charter" (*Soon Duck Kim v City of New York*, 90 NY2d at 8 [footnote omitted]).

Similarly, in *Matter of Anello v Zoning Bd. of Appeals of Vil. of Dobbs Ferry* (89 NY2d 535, 539 [1997]), the Court of Appeals held that because the petitioner acquired her property after the enactment of a "steep slope" ordinance, which ordinance prevented her from building a dwelling on her parcel, its enforcement did not deprive her of any property interest. Also, in *Basile v Town of Southampton* (89 NY2d 974, 976 [1997]), the Court concluded that since the claimant took title to her property subject to wetlands regulations and the encumbrances of certain covenants, she could not claim the value of the property without such restrictions.

However, to read these Court of Appeals cases as automatically barring a purchaser of regulated property from ever successfully raising a takings claim would be inconsistent with the United States Supreme Court's subsequent decision in *Palazzolo v Rhode Island* (533 US 606 [2001]). In *Palazzolo*, the petitioner and associates formed a corporation, Shore Gardens, Inc. (hereinafter SGI), that purchased certain real property. After SGI purchased the property, the petitioner became SGI's sole shareholder. Later, SGI's corporate charter was revoked for failure to pay corporate income taxes. Title to the property passed, by operation of state law, to the petitioner. The petitioner filed an inverse condemnation action. The petitioner asserted that Rhode Island's wetlands regulations, as applied to his parcel, had taken the property without compensation. After a nonjury trial, the Rhode Island Superior Court accepted some of the State's theories and ruled against the petitioner. The Rhode Island Supreme Court affirmed, citing multiple grounds for rejecting the petitioner's suit. One such ground was that the petitioner had no right to challenge regulations predating when he succeeded to legal ownership of the property from SGI.

The United States Supreme Court concluded that the petitioner's takings claim was not barred even though his acquisition of the property postdated the regulation (*see Palazzolo v Rhode Island*, 533 US at 617, 627, 630). The Court reasoned:

> "The theory underlying the argument that post-enactment purchasers cannot challenge a regulation

under the Takings Clause seems to run on these lines: Property rights are created by the State. See, e.g., *Phillips v Washington Legal Foundation*, 524 U.S. 156, 163 . . . So, the argument goes, by prospective legislation the State can shape and define property rights and reasonable investment-backed expectations, and subsequent owners cannot claim any injury from lost value. After all, they purchased or took title with notice of the limitation.

"The State may not put so potent a Hobbesian stick into the Lockean bundle. The right to improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions. See *Pennsylvania Coal Co.*, 260 U.S. [393,] 413, 43 S.Ct. 158 ('Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law'). The Takings Clause, however, in certain circumstances allows a landowner to assert that a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation. Just as a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned, other enactments are unreasonable and do not become less so through passage of time or title. Were we to accept the State's rule, the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land" (*Palazzolo v Rhode Island*, 533 US at 626-627).

Continuing its analysis, the Court noted that in *Lucas v South Carolina Coastal Council* (505 US 1003 [1992]), it held that a landowner's ability to recover for a regulatory taking was confined by limitations on the use of land which " 'inhere in the title itself' " (*Palazzolo v Rhode Island*, 533 US at 629, quoting *Lucas v South Carolina Coastal Council*, 505 US at 1029). This is so because the landowner is "constrained by

those 'restrictions that background principles of the State's law of property and nuisance already place upon land ownership'" (*Palazzolo v Rhode Island*, 533 US at 629, quoting *Lucas v South Carolina Coastal Council*, 505 US at 1029). Relying upon *Lucas*, the State argued that "any new regulation, once enacted, becomes a background principle of property law which cannot be challenged by those who acquire title after the enactment" (*Palazzolo v Rhode Island*, 533 US at 629). Rejecting this contention, the Court stated,

> "[w]e have no occasion to consider the precise circumstances when a legislative enactment can be deemed a background principle of state law or whether those circumstances are present here. It suffices to say that a regulation that otherwise would be unconstitutional absent compensation is not transformed into a background principle of the State's law by mere virtue of the passage of title" (*id.* at 629-630).

The Court added that "[a] regulation or common-law rule cannot be a background principle for some owners but not for others. The determination whether an existing, general law can limit all economic use of property must turn on objective factors, such as the nature of the land use proscribed" (*id.* at 630). Thus, "[a] law does not become a background principle for subsequent owners by enactment itself" (*id.*).

In this case, the City maintains that it would not be inconsistent with *Palazzolo* to find that *Gazza* and its companion cases bar a postenactment purchaser from successfully bringing a takings claim because "[t]hese cases articulate certain state property law principles that *Palazzolo* refers to as 'background principles' and explain how these principles shape interests in property." According to the City, wetlands regulations are background principles of state law that inhere in the title of a postenactment purchaser.

We are not persuaded by the City's contention. Essentially, the City's contention is that wetlands regulations are background principles of state law simply because they have been enacted. This contention is at odds with the United States Supreme Court's holding in *Palazzolo*. As that Court stated, "[a] law does not become a background principle for subsequent owners by enactment itself" (*Palazzolo v Rhode Island*, 533 US at 630).

In light of the United States Supreme Court's holding in *Palazzolo*, we conclude that a subsequent buyer of the property

would not be precluded from bringing a successful regulatory takings claim. As a result, we reject the City's argument that no knowledgeable buyer would be willing to pay a premium for the probability of a successful judicial determination that the regulations were confiscatory. We hold that the reasonable probability incremental increase rule still may be applied in valuing regulated wetlands properties taken in condemnation.

This Court's decision in *Matter of Friedenburg v New York State Dept. of Envtl. Conservation* (3 AD3d 86 [2003]), which was decided subsequent to the United States Supreme Court's opinion in *Palazzolo*, does not compel a contrary conclusion. In *Friedenburg*, this Court held that the application of State wetlands regulations rose to the level of a taking requiring compensation. This Court distinguished the facts of that case from those of *Gazza*. This Court explained that, unlike in *Gazza*, where the landowner acquired the waterfront parcels after the enactment of wetlands regulations, and at prices reflecting the diminished values of the parcels as regulated, in *Friedenburg*, Gwendolyn Londino's acquisition of the subject parcel predated the enactment of wetlands regulations, and so the rights she obtained, which were then administered by the petitioners on behalf of her estate, included development rights that were subsequently lost as a result of the enactment of wetlands regulations. Thus, this Court decided that *Gazza*'s holding did not control (*see id.* at 98). The City notes that *Friedenburg* was decided after *Palazzolo* was decided, and urges that *Friedenburg* "affirmed *Gazza*'s vitality." Yet *Friedenburg*, involving facts different from those of the case at bar, did not present this Court with the question we now answer, namely, whether the reasonable probability incremental increase rule still may be applied in valuing regulated wetlands properties taken in condemnation on the theory that a postenactment purchaser would be willing to pay a premium for a potentially successful takings challenge.

The claimant's reliance upon *Friedenburg* is also misplaced. Noting that this Court determined that *Gazza* did not control in *Friedenburg* because Londino's acquisition of the subject parcel predated the enactment of wetlands regulations, the claimant seeks to distinguish *Gazza* and its companion cases on the ground that the claimant's ownership in the property predated the enactment of the wetlands regulations. The City does not dispute that the claimant took title to the property prior to enactment of the regulations. In *Friedenburg*, the

petitioners, on behalf of Londino's estate, commenced the proceeding seeking a determination that the actions of the State Department of Environmental Conservation (hereinafter the DEC) be regarded as a taking and that the DEC be ordered to commence condemnation proceedings. Here, in contrast, the property was condemned and the claimant seeks compensation for the taking. Thus, the claimant's entitlement to an increment above the regulated value of the property can only be based on the claimant's showing that a reasonable buyer would pay a premium for the probability of a successful judicial determination that the regulations were confiscatory. That is, we are concerned with the success of a regulatory takings claim that would be brought not by the claimant which took title prior to the enactment of the regulations, but by a knowledgeable buyer who would take title subsequent to the enactment of the regulations (*see Berwick v State of New York*, 107 AD2d at 84 ["the law accords no retroactive effect to an evidentiary showing that claimant would probably have succeeded in securing a judicial declaration of unconstitutionality had he challenged the denial of a permit in a CPLR article 78 proceeding brought pursuant to ECL 25-0404. Rather, the law follows the realities of the marketplace, which are that a knowledgeable buyer would adjust his purchase price to offset the cost in time and money of applying for a permit and challenging its denial in court as confiscatory. Certainly, a knowledgeable buyer would not pay claimants the full unrestricted residential values of their properties on the day of taking, when the wetlands restrictions were still legally in effect. He would pay only the value of the property as so restricted, plus some increment representing its enhanced value at such future time when he is successful in nullifying the wetlands restrictions in court"]).

Our conclusion does not mean that the reasonable probability incremental increase rule should be applied where the regulation is shown to be a background principle of state law. But where, as here, no such showing is made, the reasonable probability incremental increase rule still may be applied in valuing regulated wetlands properties taken in condemnation.

### The Claimant Established That There was a Reasonable Probability That the Imposition of the Wetlands Regulations on the Property Would be Found to Constitute a Regulatory Taking

The City also challenges the Supreme Court's determination that the claimant established that there was a reasonable prob-

ability that the imposition of the wetlands regulations on the property would be found to constitute a regulatory taking.

Except where there has been permanent physical invasion of property or where regulations completely deprive an owner of all economically beneficial use of her property, and outside the context of land use exactions, "regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104" (*Lingle v Chevron U. S. A. Inc.*, 544 US 528, 538 [2005]). As the United States Supreme Court explained in *Lingle*:

> "The Court in *Penn Central* acknowledged that it had hitherto been 'unable to develop any "set formula" ' for evaluating regulatory takings claims, but identified 'several factors that have particular significance.' [*Penn Central Transp. Co. v New York City*, 438 US at 124]. Primary among those factors are '[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.' *Ibid*. In addition, the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'—may be relevant in discerning whether a taking has occurred. *Ibid*. The *Penn Central* factors—though each has given rise to vexing subsidiary questions—have served as the principal guidelines for resolving regulatory takings claims that do not fall within the physical takings or *Lucas* rules [*Lucas v South Carolina Coastal Council*, 505 US 1003 (1992)]" (*Lingle v Chevron U. S. A. Inc.*, 544 US at 538-539; *see Matter of New Cr. Bluebelt, Phase 4*, 122 AD3d at 861; *Matter of Friedenburg v New York State Dept. of Envtl. Conservation*, 3 AD3d at 95-96).

■ Upon consideration of the *Penn Central* factors, we agree with the Supreme Court that the claimant established that there was a reasonable probability that the imposition of the wetlands regulations on the property would be found to constitute a regulatory taking. Based on the City's valuations, the

wetlands regulations reduced the value of the property by 88%. In light of this diminution in value, together with the effective prohibition on development of any part of the property effectuated by the wetlands regulations, the claimant established that there was a reasonable probability that the imposition of the wetlands regulations on the property would be found to constitute a regulatory taking (*see Matter of New Cr. Bluebelt, Phase 4*, 122 AD3d at 862; *Berwick v State of New York*, 107 AD2d at 89-91; *Chase Manhattan Bank v State of New York*, 103 AD2d at 223-224; *cf. Putnam County Natl. Bank v City of New York*, 37 AD3d 575, 576-577 [2007]).

## The Supreme Court Should Have Applied the Increment Formula That the City Proposed Rather than the Increment That the Claimant Sought

The City contends that the Supreme Court should have applied the increment formula that its appraiser, Bob Sterling, proposed, and should not have applied the increment formula that the claimant's appraiser, Brent Lally, proposed.

"The increment above the regulated value of the property that must be added to the regulated value of the property is a percentage that represents the premium a reasonable buyer would pay for the probability of a successful judicial determination that the regulations were confiscatory" (*Matter of New Cr. Bluebelt, Phase 4*, 122 AD3d at 863; *see Berwick v State of New York*, 107 AD2d at 84; *Chase Manhattan Bank v State of New York*, 103 AD2d at 217). "When adding an increment to the value of vacant land to reflect its development potential, the specific increment which is selected and applied must be based on sufficient evidence and be satisfactorily explained" (*Matter of New Cr. Bluebelt, Phase 4*, 122 AD3d at 863; *see Matter of County of Suffolk [Firester]*, 37 NY2d 649, 653 [1975]; *Matter of Village of Haverstraw [AAA Electricians, Inc.]*, 114 AD3d 955, 956 [2014]).

■ Here, the Supreme Court should not have applied the increment that the claimant's appraiser, Lally, proposed. Lally chose an increment based only on instructions from the claimant's attorneys and on a prior case of this Court, *Estate of Berwick v State of New York* (159 AD2d 544 [1990]). A prior application of the same percentage increment is insufficient, standing alone, to justify its application in a subsequent case (*see Matter of New Cr. Bluebelt, Phase 4*, 122 AD3d at 863). Lally added no further evidence to support the application of

that increment here. In short, that increment lacked a sound evidentiary basis.

Instead, the Supreme Court should have applied the increment formula that the City's appraiser, Sterling, proposed. Sterling's proposed increment was based on market data, Sterling's opinion that it was an appropriate gauge for what a theoretical knowledgeable buyer would pay for a property like the one in this case, and Sterling's reasonable explanation of why that was so.

We conclude, in applying this formula to the figures calculated by the Supreme Court, that the claimant should have been awarded the principal sum of $156,987.84. Accordingly, the fifth separate and partial final decree is modified, on the law, by reducing the award from the principal sum of $382,190.25 to the principal sum of $156,987.84, and, as so modified, the fifth separate and partial final decree is affirmed insofar as appealed from, and the matter is remitted to the Supreme Court, Richmond County, for the entry of an appropriate amended fifth separate and partial final decree.

CHAMBERS, HINDS-RADIX and CONNOLLY, JJ., concur.

Ordered that the fifth separate and final decree is modified, on the law, by reducing the award from the principal sum of $382,190.25 to the principal sum of $156,987.84; as so modified, the fifth separate and partial final decree is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Richmond County, for the entry of an appropriate amended fifth separate and partial final decree.